# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3064

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Bruce Thunder Horse, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 12, 2004

Filed: June 4, 2004 (Corrected: 06/17/04)

_____

Before MURPHY, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Bruce Thunder Horse of abusive sexual contact with K.L., a ten-year-old girl, in violation of 18 U.S.C. §§ 1153, 2244(a)(1), and 2244(c). The district court[1] sentenced him to twenty-seven months of incarceration, thirty-six months of supervised release, restitution in the amount of $296, and a $100 special assessment. On appeal, Thunder Horse contends that the district court abused its

_____

[1] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

discretion in admitting the testimony of forensics interviewer Lora Hawkins. We affirm.

## I.

The factual summary is based on the presentence report adopted by the district court. In August 2001, Thunder Horse lived with his sister, Roberta Thunder Horse, Roberta's ten-year-old niece, K.L., and other members of the family in Wounded Knee, South Dakota. At approximately 6:00 a.m. on August 4, 2001, Thunder Horse returned to Roberta's residence intoxicated. When Thunder Horse entered the home, K.L. was sleeping on the couch in the living room. Thunder Horse picked up K.L., carried her downstairs to his sleeping area, and laid her on his mattress. Thunder Horse instructed K.L. to move over. Thunder Horse positioned himself so that his front was against her back and proceeded to rub her buttocks and genital area over her clothing.

K.L. pulled away from Thunder Horse and ran upstairs crying. She told her cousin, Roberta's twelve-year-old son, that Thunder Horse had touched her. Roberta was awakened and told of the incident. Thunder Horse was confronted by family members from the residence, who hit him, accused him of the abuse, and told him to get out of the house.

Roberta reported the incident to the Indian Health Services on August 10, 2001. K.L. was scheduled for a forensic interview at the Child Advocacy Center ("CAC") of the Black Hills on August 21, 2001, with Lora Hawkins. K.L. told Hawkins that while sleeping in the living room on the couch, "Uncle Bruce" picked her up, took her to the basement, laid her on the mattress, covered her up, and rubbed her "peach" and "the area around her butt where poop comes out." She also stated that "Uncle Bruce" rubbed himself on her "butt cheeks." K.L. stated that the touching occurred outside her clothing. During the interview, K.L. circled on an anatomical drawing the body regions that "Uncle Bruce" had touched. Although CAC used a

video camera to record the interview, the camera malfunctioned during K.L.'s interview. Also, the anatomical drawing that K.L. circled, identifying each area that Thunder Horse touched, was mistakenly destroyed.

On August 27, 2001, FBI agents interviewed Thunder Horse. Thunder Horse stated that he recalled being awakened by Roberta's daughters who were beating him and accusing him of abusing K.L. Thunder Horse admitted that he carried K.L. downstairs, laid her on his mattress, and laid down with her. He stated that he may have touched her inappropriately in her private parts like the chest or groin, and if he did, he was sorry.

On November 13, 2002, a single-count indictment was filed in the district court charging Thunder Horse with abusive-sexual contact in violation of 18 U.S.C. §§ 2244(a), 2244(c), and 1153. On November 18, 2002, Thunder Horse was arrested. On December 18, 2002, after the detention review hearing, Thunder Horse was released on a personal recognizance bond with pretrial supervision. He was ordered to reside at the City/County Drug and Alcohol Program clinic, and complete substance abuse treatment. However, on April 25, 2003, Thunder Horse was terminated from the program because he failed to follow the program's rules and regulations. Consequently, Thunder Horse's bond was revoked, and he was detained pending trial.

On May 6, 2003, a jury trial commenced. At trial, the government called Hawkins, who recounted the statements that K.L. made to her during the interview at CAC. Thunder Horse raised a hearsay objection to the contents of Hawkins's testimony, but the court overruled the objection and admitted Hawkins's testimony under the residual-hearsay exception. Thunder Horse argues that this ruling is reversible error. We disagree.

## II.

The district court is entitled to some deference in deciding whether to admit hearsay evidence under Fed. R. Evid. 807, formerly 803(24),[2] and we will affirm the court's ruling unless the court abused its discretion. *United States v. Cree*, 778 F.2d 474, 477 (8th Cir. 1985). A statement having circumstantial guarantees of trustworthiness can be admitted under Rule 807, if the court determines that:

> (A) the statement is offered as evidence of a material fact;
> (B) the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; and
> (C) the general purposes of these rules and the interests of justice must best be served by admission of the statement into evidence;

Fed. R. Evid. 807. This rule "was necessary to permit courts to admit evidence in exceptional circumstances where the evidence was necessary, highly probative, and carried a guarantee of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions." *United States v. Renville*, 779 F.2d 430, 439 (8th Cir. 1985).

Thunder Horse contends that Hawkins's testimony lacks circumstantial guarantees of trustworthiness as required under Rule 807. Specifically, Thunder Horse urges that Hawkins's testimony is untrustworthy because K.L. did not repeat the same facts consistently including: (1) K.L.'s statement to Roberta that Thunder Horse had touched her "middle," and not that he had touched her "peach"; (2) K.L.'s alleged statements to Nicole, K.L.'s friend, stating that Thunder Horse had never touched her and that she was sorry[3]; (3) K.L.'s alleged statements to Stan Zakinski,

---

[2] The content of Rule 803(24) has been transferred to Rule 807 of the Federal Rules of Evidence.

[3] This argument goes against Thunder Horse's defense theory of accidentally touching K.L. in an inappropriate manner.

Thunder Horse's private investigator, in January 2003, indicating that Thunder Horse did not touch her "peach" or "rub her butt." In cases involving the admissibility of a sexually abused child's hearsay statements under Rule 807, we must assess the trustworthiness and reliability of an out-of-court statement "in light of the circumstances at the time of the declaration and the credibility of the declarant." *United States v. Dorian*, 803 F.2d 1439, 1444 (8th Cir. 1986) (quoting *Renville*, 779 F.2d at 440).

We consider a wide range of factors in determining whether this type of hearsay testimony is sufficiently trustworthy, including: the training and experience of the interviewer; whether the child was interviewed using open-ended questions; the age of the child and whether the child used age-appropriate language in discussing the abuse; the length of time between the incident of abuse and the making of the hearsay statement; and whether the child repeated the same facts consistently to adults. *United States v. NB*, 59 F.3d 771, 776 (8th Cir. 1995). "No single factor is dispositive; we examine the factors to determine if there are sufficient positive signs of trustworthiness." *Id.*

In the instant case, several circumstantial guarantees of trustworthiness are present. First, the proximity of the statement to the alleged acts–Hawkins's interview was conducted at the CAC only seventeen days after the incident, while Zakinski's interview was conducted at a motel room almost six-months later. Second, experience of the interviewer–Hawkins has twenty years of experience interviewing child victims. Hawkins testified that she asked the victim open-ended questions rather than leading questions. Third, the victim was ten years old and discussed the incident of sexual abuse in a childlike way. "A declarant's young age is a factor that may substantially lessen the degree of skepticism with which our Court views her motives, and mitigates in favor of the trustworthiness and admissibility of her declarations." *Dorian*, 803 F.2d 1445. Lastly, K.L. denied on cross-examination telling Nicole anything about the night of the incident. The jury had the opportunity to weigh K.L.'s

statements made to Hawkins and accord the statements whatever weight it deemed appropriate.

We hold that K.L.'s statements to Hawkins contained sufficient guarantees of trustworthiness to satisfy Rule 807. Therefore, we conclude that the admission of Hawkins's testimony was not an abuse of the district court's discretion.

We affirm the district court's judgment.

_____