# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1036

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Peter James Smith, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 22, 2009
Filed: January 5, 2010

_____

Before RILEY, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Peter James Smith was convicted of two counts of aggravated sexual abuse of a child, in violation of 18 U.S.C. §§ 1153 and 2241(c). Smith appeals, arguing that the district court[1] erred by admitting a 40-minute DVD recording of a forensic interview of the child victim and by admitting the lay opinion testimony of the forensic interviewer under Federal Rule of Evidence 701. For the following reasons, we affirm.

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

## I.    BACKGROUND

In December 2006, Smith and his girlfriend, Priscilla Bear, babysat B.R., then eight years old, at B.R.'s home. Immediately thereafter, B.R. began having nightmares. During the nightmares, B.R. would yell not to touch her. Approximately one month later, B.R. told her mother that Smith had touched her inappropriately when he babysat her. On April 5, 2007, B.R.'s mother reported to Bureau of Indian Affairs Criminal Investigator Donovan Wind that Smith had sexually abused B.R. Investigator Wind contacted a Federal Bureau of Investigation ("FBI") agent who arranged for B.R. to be interviewed by forensic examiner Karen Seviour of the Red River Child Advocacy Center.

On April 10, 2007, Seviour conducted a forensic interview of B.R. B.R. told Seviour that Smith placed his fingers in her vagina on one occasion and that he touched her vaginal area over her clothing on an earlier occasion. Seviour recorded the interview on a DVD.

On January 9, 2008, Investigator Wind and FBI Special Agent Michael Thompson interviewed Smith about the allegations. Smith admitted that he knew B.R. but denied any sexual contact with her. On January 24, 2008, Smith voluntarily met with Special Agent Thompson and FBI Special Agent Kelly Kenser for a second interview. Smith initially denied any sexual contact with B.R., but as the interview progressed Smith admitted that there were two incidents in which his fingers penetrated B.R.'s vagina. The first incident occurred at B.R.'s grandmother's home around Halloween of 2006. Smith claimed that he woke up and found that B.R. had taken his hand and inserted one of his fingers, up to his first knuckle, into her vagina. He did not report the incident to anyone because it "slipped his mind." The second incident occurred on December 26, 2006. Smith claimed that he fell asleep on the toilet and woke up because B.R. had inserted two of his fingers, up to the first knuckle, into her vagina. Smith did not report this incident either.

Smith was charged with two counts of aggravated sexual abuse of a child, in violation of 18 U.S.C. § § 2241(c) and 1153, and one count of abusive sexual contact, in violation of 18 U.S.C. § § 2244(a)(5) and 1153.[2] Prior to trial, Smith filed a motion in limine seeking to prohibit the Government from introducing the DVD of B.R.'s forensic interview on the basis that the DVD contained hearsay. The Government responded, arguing that the DVD was admissible under Federal Rule of Evidence 807 and this court's decision in *United States v. Thunder Horse*, 370 F.3d 745 (8th Cir. 2004). During the final pretrial conference, the district court decided to reserve ruling on the admissibility of the DVD until trial.

At trial, B.R. testified that Smith touched her vagina underneath her clothes on two occasions. The first incident occurred at B.R.'s grandmother's home. While B.R. sat on a bed in the basement, Smith touched her inside her vagina. The second incident occurred when Smith entered B.R.'s bedroom while B.R. was sleeping. B.R. testified that Smith again penetrated her vagina with his fingers. Smith left the room, and B.R. placed suitcases in front of her door to keep Smith from entering again.

Bear testified that she and Smith babysat B.R. at B.R.'s home in December 2006. When Bear saw Smith walking toward B.R.'s bedroom, she asked him what he was doing. Smith then left the home, and Bear went to check on B.R. When Bear reached B.R.'s room, she was unable to open the door because there was luggage in front of the door.

During the defense case, Smith's counsel called Seviour as a witness for the purpose of establishing an apparent inconsistency in B.R.'s testimony and advancing Smith's theory that B.R.'s account of the incidents was the product of influence from her mother and Bear. Seviour testified that, during her forensic interview, B.R. said that Smith touched her once inside her vagina and once in the vaginal area over her

---

[2]The Government dismissed the abusive sexual contact charge at trial.

clothing. During the Government's cross-examination of Seviour, it sought to introduce the DVD recording of the entire forensic interview. Noting Smith's previous objections to the admission of the DVD, the district court overruled the objections, stating, "I believe that in chambers there[] [was] an adequate discussion of the constitutional issues, of the beyond-the-scope issues and of the Rule 807 issues." The Government then played the DVD for the jury.

During the Government's cross-examination of Seviour, it also sought to question Seviour about the apparent inconsistency between B.R.'s forensic interview and her testimony at trial. Smith objected on the basis that the question called for expert testimony under Federal Rule of Evidence 702. The parties and the district court discussed the permissible scope of Seviour's testimony, and the district court ruled that Seviour could give her lay opinion based on her experience but not based on research and studies she might have performed for the case. The Government then asked Seviour, "Yesterday [B.R.] testified that [Smith] inserted his finger inside her vagina on two occasions, not just one occasion. In your experience is that an inconsistent statement?" Seviour responded:

> In my experience I would not consider it an inconsistent statement and the reason that I wouldn't is kids make disclosures over a period of time. And so when a child comes in and does an interview with me and they do not make a disclosure I may only get a tiny part of it. And then as they are able to mature a little bit if they receive counseling in a supportive environment more details of what occurred to them may come out. And so it's not a one-time thing. It's a process for kids.

Smith objected, and the district court overruled his objection. The jury found Smith guilty of both counts of aggravated sexual abuse. The district court sentenced him to 360 months' imprisonment.

## II.    DISCUSSION

Smith appeals, arguing that the district court's admission of the DVD and Seviour's opinion testimony constitutes reversible error. In particular, Smith asserts that the Government failed to properly authenticate the DVD as required by Federal Rule of Evidence 901; that the district court did not properly discuss the requirements for admitting the DVD under Rule 807 and *Thunder Horse*; and that the matters discussed on the DVD went beyond the scope of Seviour's direct examination, in violation of Federal Rule of Evidence 611(b). Smith also argues that the district court erred in admitting Seviour's testimony regarding B.R.'s apparently inconsistent statements as a lay opinion under Rule 701.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Gustafson*, 528 F.3d 587, 590 (8th Cir. 2008). "We will not reverse a judgment on the basis of erroneous evidentiary rulings absent a showing that those rulings had a substantial influence on the jury's verdict." *United States v. Haskell*, 468 F.3d 1064, 1074 (8th Cir. 2006) (quoting *McPheeters v. Black & Weatch Corp.*, 427 F.3d 1095, 1101 (8th Cir. 2005)).

### A.    The DVD recording of B.R.'s forensic interview

First, we consider Smith's claim that the Government did not authenticate the DVD. Smith asserts that the court should have considered the factors set out in *United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), in determining if the Government laid the proper foundation for Seviour to authenticate the DVD. He further argues that Seviour could not authenticate the DVD because Seviour "had not marked the DVD to be able to identify it."

Rule 901(a) allows parties to authenticate evidence in any way that presents "evidence sufficient to support a finding that the matter in question is what its

proponent claims." Rule 901(b) provides that a party may authenticate evidence through "[t]estimony [of a witness with knowledge] that a matter is what it is claimed to be." Seviour identified the DVD as a recording of her forensic interview with B.R. and indicated that the DVD was an accurate recording of the interview. This was sufficient to authenticate the DVD under Rule 901(b). *See United States v. Two Elk*, 536 F.3d 890, 905 (8th Cir. 2008) (finding that photographs were properly authenticated where witnesses with knowledge testified that they were accurate depictions). There is no requirement that Seviour mark the DVD to identify it.

*McMillan* is simply inapplicable to this case. *McMillan* involved an electronically monitored telephone call between a government informant and McMillan. 508 F.2d at 104. The Government sought to authenticate the telephone recording through the testimony of a law enforcement agent who remotely recorded the conversation but did not participate in it. *Id.* at 104-05. We adopted several factors to be considered to determine if the law enforcement officer's electronic recording of the conversation was true and accurate, since the officer was not present during the conversation and did not participate in it. *See id.* at 104-05.[3] Because Seviour conducted and recorded the forensic interview and, therefore, was able to attest to the accuracy of the DVD recording, none of the concerns in *McMillan* are

---

[3]These factors include:

> (1) That the recording device was capable of taking the conversation now offered into evidence. (2) That the operator of the device was competent to operate the device. (3) That the recording is authentic and correct. (4) That changes, additions or deletions have not been made in the recording. (5) That the recording has been preserved in a manner that is shown to the court. (6) That the speakers are identified. (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*McMillan*, 508 F.2d at 104.

present here.  Thus, the district court did not err with respect to the authentication of the DVD.

Second, we consider Smith's argument that the district court failed to properly discuss the requirements for admitting the DVD under Rule 807 and *Thunder Horse*. Hearsay is inadmissible unless it falls within an established exception.  Fed. R. Evid. 802.  Rule 807 establishes a residual or "catch-all" exception to the ban on hearsay. Hearsay statements can be admitted under Rule 807 if the court determines that the statements have "equivalent circumstantial guarantees of trustworthiness" to the exceptions in Rule 803 and 804 and that:

> (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807.  To determine if statements made by a child who was allegedly a victim of sexual abuse to a forensic interviewer have sufficient circumstantial guarantees of trustworthiness to be admissible under Rule 807, we consider "a wide range" of nonexclusive factors, as outlined in *Thunder Horse*.  *Thunder Horse*, 370 F.3d at 748.  These factors include "the training and experience of the interviewer; whether the child was interviewed using open-ended questions; the age of the child and whether the child used age-appropriate language in discussing the abuse; the length of time between the incident of abuse and the making of the hearsay statement; and whether the child repeated the same facts consistently to adults."  *Id.* (citing *United States v. N.B.*, 59 F.3d 771, 776 (8th Cir. 1995)).

Smith argues that the district court "made no findings on the record" regarding the *Thunder Horse* factors and that the district court "made no finding" that the DVD was "more probative on the point for which it is offered than any other evidence

which the proponent can procure through reasonable efforts." Smith also argues that the "only reason" the district court gave for admitting the DVD was that it "simply felt it was fair to do so."

The district court was not required to make a finding on the record as to each of the Rule 807 requirements and the *Thunder Horse* factors as long as the record demonstrates that the district court considered the relevant factors. *See United States v. Headbird*, 461 F.3d 1074, 1078 (8th Cir. 2006); *see also United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2002) (finding no abuse of discretion where the district court "might well have articulated more detailed findings in ruling on [the] objection," but it was clear that the district court considered the relevant factors).

Here, the record demonstrates that the district court considered the Rule 807 requirements and the *Thunder Horse* factors. Smith filed a motion in limine asserting that the DVD was inadmissible hearsay, and the Government filed a response outlining the requirements for admission of the DVD under Rule 807 and *Thunder Horse*. During the pre-trial conference, the district court addressed the motion in limine but ultimately reserved ruling on the motion, stating that it would "make the necessary factual findings under Rule 807" and consider the "four or five nonexclusive [*Thunder Horse*] factors" during the trial. At trial, the Government's cross-examination of Seviour established the foundational requirements for admission of the DVD under Rule 807. When Smith objected to the Government's foundational questions, the district court overruled the objections, noting that the Government was "laying the foundation to the offer of the interview." As the cross-examination proceeded, the district court stated that it was satisfied with the Government's Rule 807 foundation and its inquiry into the *Thunder Horse* factors. The district court then admitted the DVD, noting that it overruled Smith's objection. Because the record demonstrates that the district court considered the Rule 807 requirements and the

*Thunder Horse* factors, it was not required to make a finding on the record as to each requirement and factor. Accordingly, Smith's second argument fails.[4]

Third, we consider Smith's argument that admitting and playing the DVD recording of the entire forensic interview violated Rule 611(b) because the matters discussed in the forensic interview were beyond the scope of his direct examination of Seviour. Rule 611(b) provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." However, "[t]he court may, in the exercise of [its] discretion, permit inquiry into additional matters as if on direct examination." Fed. R. Evid. 611(b). "The extent of . . . cross-examination rests largely in the trial court's discretion." *United States v. Drake*, 542 F.2d 1020, 1022 (8th Cir. 1976) (citing Fed. R. Evid. 611(b), *United States v. Seeverts*, 428 F.2d 467, 468 n.1 (8th Cir. 1970)). "Cross-examination may embrace any matter germane to direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict or rebut testimony given by the witness." *United States v. Hiland*, 909 F.2d 1114, 1132-33 (8th Cir. 1990) (quoting *Roberts v. Hollocher*, 664 F.2d 200, 203 (8th Cir. 1981)).

---

[4]Smith does not make a substantive challenge to the district court's application of the *Thunder Horse* factors. Had he made such a challenge, we would have little trouble rejecting it since we agree with the district court's conclusion that the *Thunder Horse* factors were met. We also reject Smith's argument that the DVD should not have been admitted under Rule 807 because it actually was not more probative on the point for which it was offered than any other evidence. Smith called Seviour to establish an apparent inconsistency between B.R.'s testimony at trial and the statements she made during her forensic interview. The Government introduced the DVD to show the exact statements B.R. made during the forensic interview. The DVD recording of the forensic interview was the most probative evidence of the statements B.R. made during the forensic interview. Because we conclude that the DVD was admissible under Rule 807, we need not consider whether it satisfied any other exception to the rule against hearsay or qualified for admission as non-hearsay under Rule 801(d)(1). *See* Fed. R. Evid. 802.

The matters discussed in the forensic interview were not beyond the scope of Smith's direct examination of Seviour, and even if they were, the district court did not commit reversible error. Throughout the trial, Smith placed the issue of B.R.'s credibility in controversy. Smith called Seviour to establish an inconsistency between B.R.'s statements to Seviour during the forensic interview and B.R.'s testimony at trial. On direct examination, Seviour testified that during the forensic interview, B.R. stated that Smith touched her inside her vagina on only one occasion and that he touched her vagina over her clothes on the other occasion. This testimony put B.R.'s credibility at issue by suggesting that B.R. did not tell the truth during her trial testimony when she stated that Smith's fingers penetrated her vagina during both incidents of sexual abuse. Smith's questioning of Seviour allowed the Government to admit germane evidence to "explain, contradict or rebut" the impression left by Seviour's testimony. *See Hiland*, 909 F.2d at 1132-33; *see also United States v. Womochil*, 778 F.2d 1311, 1315 (8th Cir. 1985) (allowing the Government to "clarify or complete an issue opened up by defense counsel"). B.R.'s statements describing how Smith touched her when he sexually abused her were certainly germane to the testimony Smith elicited from Seviour. The other portions of the DVD recording were also germane because B.R. provided other details of her sexual abuse that were consistent with her testimony at trial. The district court acted within its broad discretion in admitting and playing the entire DVD recording of B.R.'s forensic interview to allow the jury to assess B.R.'s credibility.

Even if the district court committed error in admitting the entire DVD recording, it was not reversible error. The district court warned Smith that "you're going to []examine [Seviour] at your risk and that there's a reasonable chance that the whole interview's going to come in if you put her on the stand and you []examine [her] about inconsistent statements." In light of the district court's warning, Smith knowingly opened the door to the admission of the entire DVD. "It is fundamental that where the defendant 'opened the door' and 'invited error' there can be no reversible error." *United States v. Beason*, 220 F.3d 964, 968 (8th Cir. 2000) (quoting *United*

*States v. Steele*, 610 F.2d 504, 505 (8th Cir. 1979)). Moreover, Smith did not identify any portion of the DVD recording that was unfairly prejudicial or that contained evidence that had not already been admitted at trial. Thus, because Smith did not show that playing the entire DVD recording of the forensic interview had a substantial influence on the jury's verdict, any error in admitting it was harmless.

## B.    Seviour's opinion testimony

Smith argues that Seviour's opinion regarding B.R.'s apparently inconsistent statements was improper expert testimony and not admissible as lay opinion under Rule 701 because Seviour's testimony was based on her "expert body of knowledge," not her perception of B.R. Additionally, he argues that the admission of Seviour's statement was not harmless because it undermined Smith's key defense theory that B.R.'s testimony at trial was the result of influence by B.R.'s mother and Bear.

"Rule 701 provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inferences is limited to those that are rationally based on the witness's perception and helpful to understanding the witness's testimony or determining a fact in issue." *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009). "Personal knowledge or perceptions based on experience" is sufficient foundation for lay testimony. *In re Air Crash at Little Rock Arkansas on June 1, 1999*, 291 F.3d 503, 515-16 (8th Cir. 2002). "[P]erceptions based on *industry experience* [are] a sufficient foundation for lay opinion testimony." *U.S. Salt, Inc.*, 563 F.3d at 690 (emphasis added) (quoting *Burlington N.R. Co. v. Nebraska*, 802 F.2d 994, 1004-05 (8th Cir. 1986)). However, a lay witnesses's opinion must not be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. This inquiry requires a case-by-case analysis of both the witness and the witnesses's opinion. *See In re Air Crash*, 291 F.3d at 515-16.

In *In re Air Crash*, we upheld the admission of the lay opinion testimony of Dr. Charles Fuller, a college professor, regarding the chances that Anna Lloyd, a student of Dr. Fuller, could become a music teacher. *Id.* at 515. Dr. Fuller was the supervisor of aspiring music teachers at Lloyd's college. *Id.* Dr. Fuller's testimony was based on his experience supervising and observing other aspiring music teachers and "his personal knowledge and observations" of Lloyd. *Id.* We found that the district court acted within its "considerable discretion" in admitting Dr. Fuller's testimony that Lloyd had a small chance of becoming a music teacher as a lay opinion under Rule 701. *Id.* at 516. Dr. Fuller was qualified to give the lay opinion "[b]ecause of [his] personal knowledge of Lloyd and his experience as the supervising instructor" of aspiring music teachers. *Id.*

As in *In re Air Crash*, here Seviour was qualified to give her lay opinion based on her personal knowledge and perception of B.R. and her experience performing forensic interviews of allegedly abused children. Seviour had performed hundreds of forensic interviews where she observed allegedly abused children and discussed allegations of sexual and physical abuse with the children. Seviour's opinion in this case was based exclusively on her experience observing other sexually abused children and her personal perception of B.R. during the forensic interview. Seviour did not refer to any "scientific, technical, or other specialized knowledge" in stating her opinion. Accordingly, the district court acted within its considerable discretion in admitting Seviour's statement as a lay opinion under Rule 701.

Even if Seviour's testimony did not qualify as a proper lay opinion under Rule 701, the error did not have a substantial influence on the jury's verdict. The evidence against Smith is strong. *See United States v. Farish*, 535 F.3d 815, 820-21 (8th Cir. 2008). After initially denying any sexual contact with B.R., Smith admitted that there were two occasions on which his fingers penetrated B.R.'s vagina up to the first knuckle. Incredibly, Smith claimed that he was unconscious on both occasions and that B.R., then a child, instigated the contact. Smith failed to report either incident to

anyone, and he claimed that he did not report the first incident because it "slipped his mind." A jury could easily disbelieve Smith's initial denial in light of his subsequent admission of sexual contact but entirely incredible denial of volition. B.R. recounted two occasions on which Smith touched her inside her vagina. B.R. stated that these incidents occurred at B.R.'s grandmother's home and at B.R.'s home, just as Smith admitted. Bear's testimony and B.R.'s mother's testimony corroborated B.R.'s account of the sexual abuse. Bear saw Smith walking toward B.R.'s bedroom on the night he sexually abused B.R. B.R.'s mother witnessed the nightmares B.R. had after the sexual abuse. Furthermore, the jury had the opportunity to view both B.R.'s live testimony and her forensic interview to evaluate the apparent inconsistency and consistencies in B.R.'s statements. We conclude that even if Seviour's testimony were not admissible, the admission of Seviour's lone answer did not substantially influence the jury's verdict. Therefore, any error would be harmless.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____