**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-2043

———————

UNITED STATES OF AMERICA

v.

ELVIN G. DEMPSEY, JR.,
                                    Appellant

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. No. 1:07-cr-00074-001)
District Judge: Hon. Gregory M. Sleet

———————

Submitted Under Third Circuit LAR 34.1(a)
October 8, 2015

———————

Before: SHWARTZ, KRAUSE, and COWEN, Circuit Judges

(Opinion Filed: October 9, 2015)

———————

OPINION*

———————

SHWARTZ, Circuit Judge.

Elvin Dempsey, Jr. appeals from his drug and firearm convictions, contending that

the District Court erred by denying his motion to suppress, admitting lay opinion

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

testimony about his truthfulness during his interrogation, and denying his motion for a judgment of acquittal based on insufficient evidence. We will affirm.

I

Wilmington Police Department ("WPD") Sergeant Liam Sullivan told WPD Detectives Randolph Pfaff and Danny Silva that he had received a tip from a confidential informant ("CI") that a man known as "Ocbar" planned to drive a gold Nissan Altima with Pennsylvania license plates to Philadelphia, Pennsylvania to pick up heroin and store it in a house located at 941 Kirkwood Street in Wilmington, Delaware ("the house"). App. 3a. Pfaff and Silva knew Ocbar to be Dempsey.

Acting on the CI's tip, the WPD surveilled the house and saw a gold Nissan Altima with Pennsylvania license plates arrive. The driver, Eric Pittman, entered the house and exited with Dempsey a few minutes later. The lone passenger, Tracey Watson, stayed in the car. Dempsey returned to the house, and Pittman and Watson drove away in the Altima.

The WPD stopped the Altima and searched Pittman and Watson, recovering a small empty plastic bag stamped "Hollywood" that they believed had contained heroin. The WPD transported Pittman to the police station, where he was interviewed by Sullivan, Pfaff, and Silva.[1] Pittman told Sullivan that he had traveled to the house that morning to buy heroin from Ocbar and that he saw "a lot" of heroin at the house. App.

---

[1] Neither Pittman nor Watson was arrested, and the empty bag was not retained. **App. 126a, 154a.**

5a, 142a. Pfaff recalled Pittman also saying that there were two men with handguns inside the house.

In part using information they had learned during Pittman's interview, Pfaff and Silva obtained and executed a search warrant for the house. Inside the house, the WPD found 1,268 small heat-sealed bags of heroin each stamped "Hollywood," 1,170 of which were found in the bathroom ceiling packaged in a knit cap and tied with a green rubber band; a .22 caliber Taurus handgun in the closet, also wrapped in a knit cap and tied with a green rubber band; a .32 caliber Colt revolver wrapped in a sock behind the kitchen drywall; five rounds of .22 caliber ammunition in a flower vase in the front room; and three men, including Dempsey. Dempsey admitted to knowing that there were heroin and firearms inside the house.

A federal grand jury returned a three-count Indictment against Dempsey for: possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count One); possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three). Dempsey moved to suppress the evidence seized and the statements he made during and after the search, contending that the search warrant affidavit omitted material facts concerning the WPD's investigation into Ocbar, and contained material misstatements of fact concerning what Pittman said during his interview. The District Court denied Dempsey's motion to suppress after a two-day evidentiary hearing during which it heard testimony from

Sullivan, Pfaff, Silva, and Pittman.  Pittman denied telling the WPD officers that he had obtained heroin from Dempsey or that there was heroin in the house, and disputed that the WPD officers had recovered an empty plastic bag from his car and thereby contradicting the statements the WPD officers attributed to him.  The District Court credited the WPD officers' description of the events of May 8, 2007, including their account of Pittman's interview and the recovery of a plastic heroin bag from the Altima.

After a three-day jury trial, Dempsey was convicted of Counts One and Three and acquitted of Count Two.  The District Court denied Dempsey's motion for a judgment of acquittal on Count Three, and Dempsey appeals.

## II[2]

### A

Dempsey first challenges the denial of his motion to suppress, contending that the District Court should have suppressed the evidence under Franks v. Delaware, 438 U.S. 154 (1978), which "requires suppression of evidence obtained pursuant to a warrant issued on the basis of a false statement that was both material to the finding of probable cause and made either knowingly and intentionally or with reckless disregard for the truth."  United States v. Brown, 631 F.3d 638, 641–42 (3d Cir. 2011) (citing Franks, 438 U.S. at 155–56).[3]  To succeed, a defendant must "prove by a preponderance of the

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction under 28 U.S.C. § 1291.

[3] On appeal from the denial of a motion to suppress, "we review the District Court's factual findings for clear error and exercise plenary review over its legal

evidence . . . : (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006).

Here, the District Court conducted a Franks hearing and concluded that Dempsey failed to prove a material misstatement or omission necessary to the probable cause supporting the May 8, 2007 search. On appeal, Dempsey contends that the District Court's ruling "depended on credibility findings" relating to the WPD officers' account of Pittman's interview and that those findings "are clearly erroneous." Opening Br. 20. He further argues that the WPD officers "withheld" from the affidavit facts concerning a prior search of a different house and failed to include any information establishing the CI's reliability. Id. at 9.

With respect to his credibility challenge, "'assessments of credibility by the trial court are entitled to great deference at the appellate level.'" United States v. Givan, 320 F.3d 452, 464 (3d Cir. 2003) (quoting United States v. Brothers, 75 F.3d 845, 853 (3d Cir. 1996)); see also United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir. 1997) ("[W]hen the district court's decision is based on testimony that is coherent and plausible,

determinations." United States v. Stanley, 753 F.3d 114, 118 (3d Cir. 2014); see also Brown, 631 F.3d at 642 (holding that, in the Franks context, "a district court's resolution of the question whether a particular false statement in a warrant affidavit was made with reckless disregard for the truth is subject to reversal only upon a finding of clear error").

not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error."). Here, the District Court credited Sullivan, Pfaff, and Silva's unanimous testimony that Pittman admitted observing heroin in the house and purchasing heroin from Dempsey. Other than Pittman's denial that he made such statements, Dempsey has provided no basis either in his motion to suppress or at the Franks hearing to reject the testimony that supported the statements in the affidavit recounting Pittman's interview. In light of the WPD officers' testimony, the District Court's finding that there were no material misstatements was not clearly erroneous. Moreover, any information allegedly omitted from the affidavit concerning a prior search at a different house or background concerning the CI did not preclude a finding of probable cause to believe that the house contained heroin on May 8, 2007 given Pittman's detailed account of what he saw, which corroborated the CI's information. See Yusuf, 461 F.3d at 383–84. We thus find no clear error in the denial of Dempsey's motion to suppress.[4]

B

---

[4] Dempsey also contends that the affidavit's alleged invalidity requires suppression of his statements as "fruit of the poisonous true." Opening Br. 22. Because Dempsey raises this argument only "in passing" without "squarely argu[ing] it," it is waived, and we will not address it. John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). Even if we addressed the argument, it would fail as the search was lawful and thus did not "poison" anything that occurred afterwards.

Dempsey next challenges the admission of the WPD officers' trial testimony that Dempsey was not truthful during his May 8, 2007 interrogation.[5]  The District Court held this was proper lay opinion testimony and therefore admissible under Fed. R. Evid. ("Rule") 701.

To be admissible under Rule 701, lay opinions must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." United States v. Georgiou, 777 F.3d 125, 143 (3d Cir. 2015) (quoting Fed. R. Evid. 701).  We afford "broad discretion" to the admission of lay testimony "provided that it is well founded on personal knowledge and susceptible to specific cross-examination." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175 (3d Cir. 1993) (citation and internal quotation marks omitted).

The District Court did not err in admitting this testimony.[6]  The WPD officers' testimony was rationally based on their personal perception of Dempsey's demeanor and the answers he gave during the interrogation, and involved no scientific, technical, or

---

[5] Dempsey's post-arrest interview was videotaped, but the tape was not admitted into evidence.

[6] "Generally, we review evidentiary rulings for abuse of discretion, but when no objection is made at trial we review for plain error only." United States v. Kolodesh, 787 F.3d 224, 234 n.12 (3d Cir. 2015) (citation and internal quotation marks omitted).  The Government contends that the plain error standard of review applies to this issue. See United States v. Plotts, 359 F.3d 247, 249 (3d Cir. 2004).  Dempsey objected to certain parts of the testimony, but not others.  We need not decide to which portions he preserved his objections because, even under the standard more favorable to Dempsey, we conclude that there was no error in the admission of the evidence.

specialized knowledge.  <u>Georgiou</u>, 777 F.3d at 143.  They explained the bases for their impressions about Dempsey's truthfulness, which was particularly helpful in this case because the jury did not view the videotape of the interrogation and thus could not see his body language or facial expressions or hear his tone of voice when he spoke to the WPD.  **Supp. App. 1–6, App. 242a.**  <u>See generally</u> <u>United States v. Freeman</u>, 730 F.3d 590, 595 (6th Cir. 2013) ("[L]ay opinion testimony is permitted under Rule 701 because it has the effect of describing something that the jurors could not otherwise experience for themselves . . . ." (citation and internal quotation marks omitted)).

Furthermore, the WPD witnesses did not testify about Dempsey's overall veracity or propensity for truthfulness.  Rather, their testimony was based only on his post-arrest interview during which he made inconsistent statements and spoke "in circles."  App. 485a.  Moreover, Dempsey's counsel had the opportunity to fully cross-examine each of the WPD witnesses who interrogated him.  <u>Lightning Lube</u>, 4 F.3d at 1175 (favoring admission of lay testimony if based "on personal knowledge and susceptible to specific cross-examination").  Lastly, the District Court specifically instructed the jury not to afford the WPD officers' testimony any more weight than any other witness's and told the jurors that they alone were the arbiters of credibility.  Under these circumstances, the District Court did not abuse its discretion in admitting the officers' testimony.  <u>See, e.g.</u>, <u>United States v. Smith</u>, 591 F.3d 974, 982 (8th Cir. 2010) (holding that district court acted within its discretion in admitting witness's opinion of child's "apparently inconsistent statements" during forensic interview).

8

C

Dempsey last challenges the sufficiency of the evidence underlying his § 922(g)(1) conviction on Count Three for possession of the Taurus .22 caliber handgun. Our inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 424-25 (3d Cir. 2013) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 318–19 (1979)). "We do not weigh evidence or determine the credibility of witnesses in making this determination." United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003) (citation and internal quotation marks omitted). Rather, we view the evidence as a whole and "ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." Caraballo-Rodriguez, 726 F.3d at 430 (citation and internal quotation marks omitted).

A conviction under § 922(g)(1) "requires proof that: (1) the defendant has been convicted of a crime of imprisonment for a term in excess of one year; (2) the defendant knowingly possessed the firearm; and (3) the firearm traveled in interstate commerce." United States v. Brown, 765 F.3d 278, 291–92 (3d Cir. 2014) (citation and internal quotation marks omitted). Dempsey argues only that there was insufficient evidence that he knowingly possessed the Taurus .22 caliber handgun. We disagree and hold that the jury rationally could have found Dempsey in constructive possession of the firearm. "Constructive possession exists if an individual knowingly has both the power and the

9

intention at a given time to exercise dominion or control over" an object. United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) (citation and internal quotation marks omitted). Although "mere presence on the property" or "mere proximity" to the firearm is insufficient to prove constructive possession, United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993) (citation and internal quotation marks omitted), constructive possession may nonetheless "be proved by circumstantial evidence," United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008).

There was sufficient evidence for a rational trier of fact to find Dempsey was in constructive possession of the firearm. The jury heard evidence that Dempsey maintained control of the house in which the firearm was found and that the WPD found it concealed in the same manner—in a black knit cap tied with a green rubber band—as the heroin the WPD found in the ceiling and which Dempsey admitted to hiding, **App. 316a, 321a–23a, 342a, 345a**. Moreover, there was testimony that Dempsey admitted that the .22 caliber handgun came into the house months before and that Dempsey had discharged the firearm while inside the house. **App. 560a.** Thus, a rational juror could have found Dempsey in constructive possession of the .22 caliber Taurus handgun, and we reject his sufficiency challenge to Count Three.

III

For the foregoing reasons, we will affirm the judgment of the District Court.

10