# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-2402

———————————————

United States of America

*Plaintiff - Appellee*

v.

Tyson Quigley, also known as Tyson Stands

*Defendant - Appellant*

—————————

Appeal from United States District Court
for the District of South Dakota - Central

—————————

Submitted: March 19, 2025
Filed: July 2, 2025

—————————

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

—————————

SHEPHERD, Circuit Judge.

After a jury trial, Tyson Quigley was convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(d). The district court[1] sentenced him to 90 months' imprisonment, followed by 3 years of

—————————

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

supervised release. Quigley appeals, arguing that the district court erred when it excluded from trial statements made by Quigley's deceased co-defendant. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In January 2023, Rosebud Sioux Tribe law enforcement officers responded to a call reporting a man brandishing a firearm at the home of Benjamin Fool Bull. Witnesses stated that two men had entered the home, and that one man was brandishing a firearm while the other carried a baseball bat. The witnesses identified the man carrying the firearm as Tyson Quigley and the man carrying the baseball bat as Erwin White Lance. They further reported that the men had entered the residence looking for another man who had allegedly assaulted White Lance, and that Quigley and White Lance left the residence in a gold Chrysler sedan. Law enforcement later located the sedan and observed both Quigley and White Lance exit the vehicle. A search of the vehicle revealed a .40 caliber Smith and Wesson, an extended magazine with 13 rounds of .40 caliber ammunition, a spent shell casing, a baseball bat, a hammer, and a knife.

Law enforcement arrested both Quigley and White Lance. Quigley declined an interview with investigators but White Lance agreed to an interview after being advised of his Miranda[2] rights. During this interview, White Lance generally recounted his version of what had occurred at the Fool Bull home—including stating that he had been invited into the residence—until the investigator stated to White Lance, "This is where you start telling the truth and helping yourself out. 'Cause right now, I've got you for burglary and a bunch of other stuff. This is when you start telling the truth. This is why I'm here. I'm not here to be lied to. All Right?" White Lance responded, "All right. But I'm not lying. I was just, I was, I'll, I'll, I'll plead the Fifth from here." The investigator responded, "Okay," but as the

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

interview ended, White Lance stated, unprompted, "And I, I'll take responsibility for that gun."

Quigley and White Lance were both charged with one count of first-degree burglary and aiding and abetting that offense, in violation of 18 U.S.C. §§ 1153 and 2 and S.D. Codified Laws § 22-32-1, and one count of the use and carrying of a firearm during and in relation to a crime of violence and aiding and abetting that offense, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. Quigley was also charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), (d). White Lance died while these proceedings were ongoing, and the district court dismissed the indictment against him.

Quigley pled not guilty and proceeded to trial. The Government filed a motion in limine, seeking to have the statements White Lance made during his post-arrest questioning excluded as inadmissible hearsay. Specifically, the Government challenged the admission of the statement that White Lance was invited into the residence, his denial that Quigley was with him during the incident, and White Lance's statement that he would take responsibility for the firearm. The Government also asserted that, even if the statements were admissible under a hearsay exception, Federal Rule of Evidence 403 counseled their exclusion based on the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or presenting cumulative evidence. Quigley responded that White Lance's statements were admissible under Rule 804 as statements against interests made by an unavailable witness or under Rule 807's residual hearsay exception.

The district court preliminarily granted the Government's motion in limine. First, the district court considered the statements' admissibility under Rule 804, determining that the only truly inculpatory statement was White Lance's statement taking responsibility for the firearm. The district court then considered whether there was corroborating evidence supporting the statement's trustworthiness, but noted that it was "poorly situated" to make this determination pretrial, thus "defer[ing] until trial, and likely until toward the end of testimony, a final ruling on

-3-

whether any of White Lance's statements qualify for admission under Rule 804(b)(3)." The district court also concluded that "admission under the residual exception [in Rule 807] is a decision better made at trial." Regardless, the district court ordered that White Lance's statements were "not to be mentioned during voir dire, opening statements, or witness testimony, unless and until this Court outside of the hearing of the jury rule[d] otherwise."

At trial, Quigley again raised the admissibility of White Lance's statements, but the district court explained that it "ha[d] not heard anything at [that] point that would alter that ruling, but that still remain[ed] open." The district court reiterated that it did not believe White Lance's statements about being invited into the house and Quigley not being with him were statements against interest. However, it then stated that White Lance's statement that he would take responsibility for the firearm was "the one that the Court would think about the most." The district court then noted that no evidence demonstrated White Lance had a felony conviction, concluding that "there would have to [be] something in Mr. White Lance's history that would make him prohibited from possessing it[] for . . . his statement 'I'll take responsibility for the gun too' to become admissible." In the end, the district court stated that it did not "see reason to reconsider the prior ruling." Quigley did not raise the issue again.

The jury ultimately found Quigley guilty of being a felon in possession of a firearm but acquitted him on the two other counts. The district sentenced him to 90 months' imprisonment, followed by 3 years of supervised release. Quigley now appeals, asserting that the district court erroneously excluded White Lance's statements at trial.

## II.

Quigley asserts that the district court erred in excluding White Lance's statement regarding responsibility for the firearm because it was admissible under either Federal Rule of Evidence 804(b)(3) or 807. "We review a district court's

-4-

evidentiary rulings for an abuse of discretion." United States v. Foard, 108 F.4th 729, 734 (8th Cir. 2024).

Under Rule 804(b)(3), a statement from an unavailable witness is admissible as a hearsay exception if:

> (A) a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) if offered in a criminal case as one that tends to expose the declarant to criminal liability, is supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was made and any evidence that supports or undermines it.

As to the first requirement, "[i]n determining whether a statement is genuinely inculpatory, a court must examine the circumstances under which the statement was given. A statement is not truly self-inculpatory if it merely attempts to shift blame or curry favor." United States v. Chase, 451 F.3d 474, 480 (8th Cir. 2006) (citation omitted). As to the trustworthiness of a statement, "corroborating circumstances" include:

> (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration[,] and [ (6) ] the relationship between the speaker and the witness.

United States v. Lindsey, 702 F.3d 1092, 1102 (8th Cir. 2013) (alterations in original) (citation omitted).

-5-

The district court concluded that White Lance's statement about taking responsibility for the firearm was not self-inculpatory. We need not conclusively resolve this issue, however, because even if the statement were inculpatory, Quigley fails to show that the statement was sufficiently trustworthy to warrant its admission. White Lance stated he would take responsibility for the firearm only at the end of the interview with the investigator and only after the investigator confronted him for being untruthful. Further, this statement was directly contradicted by eye witnesses, who testified that Quigley was the one carrying the firearm during the incident. Finally, the record demonstrated that White Lance and Quigley were close friends, providing White Lance with a motive to be untruthful: to protect Quigley, who had a previous felony conviction that prevented him from lawfully possessing a firearm. Quigley does not seriously contest any of these facts, instead merely challenging the credibility of the eye witnesses, a matter which is uniquely within the province of the jury and "virtually unreviewable on appeal." See United States v. Jones, 728 F.3d 763, 768 (8th Cir. 2013) (holding that where the defendant "disagrees with the jury's credibility determinations," such determinations are "virtually unreviewable on appeal"). Under these circumstances, the district court did not abuse its discretion in concluding that the statement was not admissible under Rule 804(b)(3). See United States v. Alexander, 114 F.4th 967, 974 (8th Cir. 2024) (concluding that a statement lacked trustworthiness because declarant was close friends with the defendant, the statement benefitted the defendant, and the statement was not corroborated by other evidence).

Quigley asserts that, even if the statement is not admissible under Rule 804(b)(3), Rule 807's residual exception nonetheless supports its admission. Under Rule 807, a statement that is not admissible under a hearsay exception is nevertheless admissible where:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

This rule "permit[s] courts to admit evidence in exceptional circumstances where the evidence was necessary, highly probative, and carried a guarantee of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions." United States v. Thunder Horse, 370 F.3d 745, 747 (8th Cir. 2004) (citation omitted). Because the statement did not meet the standard of trustworthiness under Rule 804(b)(3), it follows that it also cannot meet the "equivalent . . . or superior" trustworthiness requirement in Rule 807. See id. The district court thus did not abuse its discretion in excluding White Lance's statement at trial.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____