# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 08-2423/2465

_____

| | | |
|---|---|---|
| US Salt, Inc., | * | |
| | * | |
| Plaintiff - Appellant/ | * | |
| Cross-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Broken Arrow, Inc., | * | Appeals from the United States |
| | * | District Court for the |
| Defendant - Appellee/ | * | District of Minnesota. |
| Cross-Appellant, | * | |
| | * | |
| John Does 1-10; XYZ Corporation, | * | |
| whose true names are unknown to | * | |
| Plaintiff; ABC Corporation, whose | * | |
| true names are unknown to Plaintiff, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted:  March 12, 2009
Filed:  April 20, 2009

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

US Salt, Inc. (US Salt) filed this breach of contract action in Minnesota state court against Broken Arrow, Inc. (Broken Arrow), which subsequently removed the

case to federal court on the basis of diversity jurisdiction. The district court[1] granted US Salt partial summary judgment on its breach of contract claim but ultimately dismissed the claim for failure to submit admissible evidence to prove damages. US Salt appeals the district court's dismissal, and Broken Arrow has filed a cross appeal to challenge the district court's grant of partial summary judgment. We affirm.

Since 1982 Thomas Johnson has been President of US Salt. According to Johnson, US Salt has not been in the water conditioning business since the mid to late 1980s. For several years Johnson had sought to reenter the water conditioning business, but he had not been able to locate a high quality source of washed and dried extra coarse solar salt to be used in water conditioners. In 2003 Johnson received a solicitation letter from Broken Arrow, along with a sample of the extra coarse salt it intended to sell to US Salt.

In June 2004 US Salt entered into a contract to purchase a minimum of 15,000 tons of solar salt annually from Broken Arrow. The parties agreed that the duration of the contract would span July 1, 2004 through December 31, 2007, and that the price of the salt would remain $20 per ton until January 1, 2007. The different grades of salt that were available for purchase under the contract included extra coarse, coarse, medium, and fine. After the contract was signed, US Salt informed Broken Arrow that it only wanted to purchase extra coarse salt. Following several disputes, Broken Arrow stopped selling salt to US Salt in August 2005.

US Salt filed this action in state court, alleging breach of contract. Broken Arrow removed the case to federal court on diversity grounds, and US Salt moved for summary judgment. The district court granted partial summary judgment to US Salt, concluding as a matter of law that the contract was enforceable and Broken Arrow had

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

breached the agreement. The court noted that the issue of any damages would be presented to the jury.

During discovery, US Salt retained the services of a financial and accounting expert, Arthur Cobb, to testify as to US Salt's lost profits resulting from Broken Arrow's breach of the contract. Cobb submitted two reports to support US Salt's damages claim. In Cobb's first report, prepared in October 2007, he opined that US Salt had suffered approximately $1,800,000 in damages for lost profits and rail car lease costs. At Cobb's first deposition, he admitted that he had started his analysis only two to three days before his report was filed; that the primary factual bases for his first report were the assumptions and estimates he was provided by Johnson; and that he did not do any independent analysis of the local salt market. A few days later, Cobb filed a supplemental report adjusting his opinion to be that US Salt had suffered damages in the range of $677,000 to $1,060,000. This report included more factual assumptions provided by Johnson. At his second deposition, Cobb testified that he had not performed any independent research to confirm the accuracy of Johnson's estimates and assumptions other than reviewing the deposition testimony of US Salt's customer, Gary Capone of Surge Water Conditioning.

At Johnson's deposition, he identified Capone as a customer who had given him "different estimates" as to the volume of salt he expected to buy from US Salt; however, Johnson admitted that there was no way of verifying those estimates "until [he] started bagging." Johnson also testified that he was not able to obtain a written commitment from any customer regarding how much they would pay for solar salt.

During a pretrial hearing held on April 24, 2008, the district court granted Broken Arrow's motion to exclude Cobb from testifying at trial, concluding Cobb's expert testimony was not sufficiently reliable under Federal Rule of Evidence 702. The court pointed out that Cobb's conclusions, such as his lost profits estimates, were inconsistent and that in reaching his conclusions, Cobb had conducted no analysis of

the Minnesota salt market and had relied "almost exclusively"--and without verification--on Johnson's unsupported assumptions and estimates. The court also excluded Johnson's proposed testimony with respect to US Salt's lost profits because "his assumptions and estimates as to US Salt's expected sales were nothing more than optimistic projections." The court noted that Cobb's reliance on Johnson's estimates was a "house built on a very shaky foundation."

After the court's evidentiary rulings left US Salt with little or no evidence of lost profits, the court directed US Salt to provide a summary of what damages, if any, remained for trial. US Salt submitted an itemized list of new damages to the court that had never been previously disclosed to Broken Arrow. Broken Arrow then moved to exclude the evidence as unfairly prejudicial. Ultimately the court held that US Salt's failure to disclose these new damages prior to trial was neither substantially justified nor harmless. Accordingly, the court dismissed US Salt's breach of contract claim for failure to submit admissible evidence to prove damages.

On appeal US Salt argues that the district court erred in excluding the expert testimony of Cobb and the lay opinion testimony of Johnson regarding lost profits. Broken Arrow cross appeals the district court's summary judgment rulings that held the contract was enforceable and Broken Arrow had breached the contract.

A district court's order prohibiting the admission of lay opinion or expert testimony is reviewed for an abuse of discretion. In re Air Crash at Little Rock Ark., on June 1, 1999, 291 F.3d 503, 509 (8th Cir. 2002). A district court enjoys "wide discretion in ruling on the admissibility of proffered evidence," Harris v. Sec'y, U.S. Dep't of the Army, 119 F.3d 1313, 1321 (8th Cir. 1997), and evidentiary rulings should only be overturned if there was a "clear and prejudicial abuse of discretion," Haynes v. Am. Motors Corp., 691 F.2d 1268, 1272 (8th Cir. 1982).

US Salt first argues that Johnson as president of US Salt is qualified to provide lay opinion testimony as to lost profits because of his unique understanding of US Salt's operations and finances. Broken Arrow argues that Johnson's proposed testimony is too speculative to justify a damage award since it was based on optimistic projections for an unproven enterprise. Federal Rule of Evidence 701 provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inferences is limited to those that are rationally based on the witness's perception and helpful to understanding the witness's testimony or determining a fact in issue. A witness may provide lay opinion testimony "about facts within his or her range of generalized knowledge, experience, and perception." United States v. Espino, 317 F.3d 788, 797 (8th Cir. 2003). "[P]erceptions based on industry experience, is a sufficient foundation for lay opinion testimony." Burlington N. R.R. Co. v. Nebraska, 802 F.2d 994, 1004-05 (8th Cir. 1986).

We conclude that Johnson's proposed testimony regarding lost profits amounts to speculation and conjecture because he failed to perform any analysis of a viable market for the solar salt he expected to receive from Broken Arrow and he lacked relevant and recent activity in the solar salt market. See Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 401 F.3d 901, 914 (8th Cir. 2005) (damages based on future lost profits may not be "remote, speculative, or conjectural" and "must be proved with a reasonable degree of certainty and exactness"; "[a]bsolute exactitude" of future losses is not required (internal quotations omitted)). Notably, the record demonstrates that Johnson could not identify any customer interested in buying from US Salt a specific amount of solar salt at a specific price and that US Salt had not been active in the solar salt market since the late 1980s. See Mostly Media, Inc. v. U.S. W. Commc'ns, 186 F.3d 864, 866-67 (8th Cir. 1999) (agreeing with district court that business owner's proof of damages was too speculative where business owner merely relied upon anticipated profit of business without any underlying supportive data); Hammann v. 1-800 Ideas.com, Inc., 455 F. Supp. 2d 942, 948 (D. Minn. 2006) ("Damages for lost profits, especially for a relatively new business venture, must be supported by specific,

concrete evidence, not by mere speculation and conjecture." (internal quotations omitted)).

For support US Salt relies on Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175-76 (3rd Cir. 1993), where the Third Circuit held that the district court did not abuse its discretion in permitting a business owner to give lay opinion testimony as to lost profit damages. US Salt's reliance is misplaced because, unlike the business owner in Lightning Lube, Johnson has not shown any written commitments from any customer as to the price it would pay for solar salt; he does not have recent experience within the relevant market; and he has not presented any objective market research, a cost analysis, or a business plan. Id. at 1174-75. We conclude that the district court did not abuse its broad discretion by excluding Johnson's proposed testimony with respect to lost profits.

US Salt next contends the district court erred by excluding the testimony of the proposed damages expert, Cobb. US Salt argues that although Cobb relied on Johnson to supply the underlying facts for the conclusions in his report and proposed expert testimony, such testimony was sufficiently reliable because Cobb would help the jury understand the accounting and financial principles that go into a calculation of lost profits.

In diversity cases the admissibility of expert testimony is governed by federal law. Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005). Federal Rule of Evidence 702 provides that an expert may testify if the testimony is based upon sufficient facts or data; the testimony is the product of reliable principles and methods; and the witness has applied the principles and methods reliably to the facts of the case. An expert's opinion must be excluded if the proposed testimony "is so fundamentally unsupported that it can offer no assistance to the jury." Neb. Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 416 (8th Cir. 2005).

We conclude that the district court did not abuse its discretion in excluding Cobb's expert testimony because he relied almost exclusively on Johnson's speculative estimates without any independent verification; he conducted little if any investigation or analysis of market conditions; and he revised his opinion on damages dramatically from $1,800,000 to a range of $600,000 to $1,060,000. See Meterlogic, Inc. v. KLT, Inc., 368 F.3d 1017, 1019 (8th Cir. 2004) (affirming district court's exclusion of expert testimony as unreliable where expert had not performed market survey, had not validated speculative report prepared by company, and had not accounted for recent changes in market).

Accordingly, the judgment of the district court is affirmed and the cross appeal is dismissed as moot.

_____