# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1328

_____

United States of America,

Appellee,

v.

Donald Turner,

Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Missouri.
\*
\*
\*

_____

Submitted: September 22, 2009
Filed: October 16, 2009

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Donald Turner appeals his jury conviction and the district court's[1] 120-month sentence for conspiracy to manufacture methamphetamine, in violation of 21 U.S.C §§ 841(a) and 846, and manufacture of 500 grams or more of methamphetamine, in violation of 21 U.S.C § 841(a)(1) and 18 U.S.C. § 2. For the reasons set forth below, we affirm.

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

I.

Because Turner challenges the sufficiency of the evidence, "[w]e recite the facts in the light most favorable to the jury's verdict." United States v. Stevens, 439 F.3d 983, 986 (8th Cir. 2006). On September 28, 2007, a Jefferson County Patrol Officer detected strong chemical odors emanating from a residence at 3850 Fountain City Road in DeSoto, Missouri. Believing the odors were associated with the production of methamphetamine, the patrol officer immediately contacted detectives with the Jefferson County Municipal Enforcement Group—a narcotics task force. Specially trained narcotics detectives arrived at the residence approximately 30 minutes later.

At approximately 9:30 p.m., when the detectives first arrived, they made contact with the patrol officer to further assess the situation. The detectives smelled anhydrous ammonia, acetone, and starter fluid in the area. These odors are commonly associated with products used to manufacture methamphetamine and concerned the detectives because of the dangers of methamphetamine manufacture, particularly the potential for explosions. The detectives became further alarmed when they noticed that the smell became stronger as they approached the residence.

Through the glass-paneled front door of the residence, the officers observed Donald Turner and Larry Sanders sitting at the kitchen table. The detectives knocked and announced their presence but there was no response from the interior of the residence. The detectives observed both Turner and Sanders leave the kitchen and through another window in the rear of the home, detectives observed that Turner had gone to the basement and was pacing back and forth. The officers also noticed that the back door of the house had been blockaded. Based on the potential safety hazards of methamphetamine manufacture to anyone inside the residence or in close proximity thereto, the detectives forcefully entered the residence.

The chemical odor increased when the detectives entered the house. Their first objective was to clear the house of people, and they removed Turner and Sanders from the residence. The fire department brought fans to clear the fumes because of the high level of dangerous chemicals in the air. Once the air was safer to breathe, the detectives began to search the house. In the kitchen, they observed several items commonly associated with the production of methamphetamine, including: scales, rubber gloves, camp fuel, a fan, currency, grinders, Zip Lock baggies, pyrex dishes, Rubbermaid containers, hydrogen peroxide, acetone, and clear plastic tubing. The detectives also discovered a baggie with powder containing 500.39 grams of a methamphetamine mixture, and two buckets of liquid—one containing 51.13 grams of a methamphetamine mixture and another with 37.9 grams of the mixture. Outside the house, the detectives discovered a pick-up truck, inside of which were several anhydrous ammonia tanks that had been altered for use in methamphetamine manufacture. The detectives arrested both Sanders and Turner. On September 11, 2008, a superceding indictment was filed charging Turner with conspiracy to manufacture methamphetamine and manufacture of methamphetamine.

During Turner's trial in November 2008, two witnesses testified regarding prior bad acts of Turner. Prior to the testimony of these witnesses, the district court gave a limiting instruction to the jury, admitting the prior bad act evidence only for the purpose of showing Turner's knowledge and intent. One of the witnesses, Detective Beverly Gillam of the Franklin County Sheriff's Department, connected Turner to an event on May 30, 2002. The event involved a fire on property that she had been investigating for methamphetamine manufacture in Richwoods, Missouri. Gillam testified that upon arriving to the scene of the fire, she observed Turner standing nearby. Gillam also stated that in the fire, she discovered several items associated with methamphetamine manufacture, including cans of starter fluid. After obtaining Turner's consent, Gillam searched Turner's home, where she detected an overwhelming odor of ether inside. Gillam testified that ether odor is emitted from starter fluid.

The other witness, Pamela Trotter, testified that in 2000 she observed Turner manufacture methamphetamine. Further, Trotter stated that on a weekly basis, from the end of 2002 until 2004, she allowed Turner to cook methamphetamine on her property. Trotter testified that she provided Turner with pseudoephedrine for the methamphetamine manufacture, in exchange for her personal use of the methamphetamine Turner produced.

After a three-day jury trial, the jury convicted Turner of conspiracy to manufacture methamphetamine and the manufacture of methamphetamine. The Presentence Investigation Report (PSR) assigned Turner a Category I criminal history because he had no prior convictions. The PSR also recommended a total offense level of 32, based on the amount of methamphetamine discovered. The PSR thus recommended an advisory Guidelines range of 121-151 months imprisonment. After considering relevant sentencing factors, pursuant to 18 U.S.C. § 3553(a), the district court ultimately sentenced Turner to the lower mandatory minimum sentence of 120 months imprisonment.

Turner now appeals the district court's admission of prior bad act evidence, denial of his motion of acquittal at the close of the evidence, and mandatory minimum sentence.

II.

A.

Turner first contends that the district court erred in allowing the testimony of Beverly Gillam and Pamela Trotter under Federal Rule of Evidence 404(b). "[W]e review the district court's Rule 404(b) ruling for an abuse of discretion." United States v. Frazier, 280 F.3d 835, 847 (8th Cir. 2002). This court characterizes Rule 404(b) as "a rule of inclusion rather than exclusion," and we will reverse a district court's

admission of prior act evidence "only when such evidence clearly ha[s] no bearing on the issues in the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Benitez, 531 F.3d 711, 716 (8th Cir. 2008). Here, we find that the district court did not abuse its discretion by admitting the prior bad act evidence.

Rule 404(b) specifically states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Prior bad act evidence is admissible, however, when introduced for any other purpose, including to show knowledge or intent. Id. Even if introduced for a purpose other than character, not all prior bad act evidence is admissible, as it is still subject to an additional four-factor admissibility test. The evidence must:

> (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value.

United States v. Kern, 12 F.3d 122, 124-25 (8th Cir. 1993). We find that the prior bad act testimony of Trotter and Gillam meets all four factors.

First, the prior bad act evidence was relevant to the material issues of whether Turner had knowledge of methamphetamine manufacture and the items involved therein, and whether Turner had the intent to contribute to the methamphetamine manufacture that occurred at 3850 Fountain City Road. Evidence of prior drug dealings is "relevant to the material issue [of] whether [Turner] had the requisite intent to enter into a conspiracy." United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006). Furthermore, Turner claims that he was "merely present" at Sander's house,

was only in the residence for five minutes before the detectives arrived, and was not aware of the methamphetamine manufacture or the conspiracy. The assertion of a "mere presence" defense places Turner's state of mind in question, and "Rule 404(b) evidence is admissible to show knowledge and intent when a defendant places his state of mind at issue." United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002). Because both knowledge and intent were material issues at trial, the prior bad act evidence regarding Turner's knowledge and intent was relevant.

Second, the prior bad act evidence is similar in kind and close in time to the charged crimes because it involved the same act—the manufacture of methamphetamine—and occurred only four to six years prior to trial. United States v. Trogdon, 575 F.3d 762, 766 (8th Cir. 2009) (holding that evidence of 11-year-old conduct was not too far remote in time). Third, the prior bad act evidence was supported by sufficient evidence because Trotter's and Gillam's testimony was sufficient to support a jury finding that Turner had manufactured methamphetamine in the past. Johnson, 439 F.3d at 953 (prior act evidence sufficient to support a finding that the defendant committed the prior act of crack cocaine dealing). Turner argues that Trotter was not a credible witness because Trotter admittedly used methamphetamine during the period involved in her testimony, and therefore her testimony was insufficient to connect him to the prior methamphetamine manufacture. However, "[a]lthough [Trotter's] checkered past may have hindered [her] reliability, we generally leave credibility determinations to the jury." Id.

Finally, the prejudicial effect of the evidence did not substantially outweigh its probative value. Here, we find that the evidence was highly probative of Turner's knowledge and intent, and that the district court's limiting instruction—clarifying that the evidence was admitted only for the purpose of showing knowledge and intent—minimized any prejudicial effect it may have had. See Trogdon, 575 F.3d at 766; see also United States v. Gaddy, 532 F.3d 783, 790 (8th Cir.), cert. denied, 129 S. Ct. 587 (2008).

B.

Turner claims that the evidence was insufficient to support both his conspiracy and manufacture of methamphetamine convictions because he was only in the residence five minutes prior to the detectives' arrival, and there was no direct evidence connecting him to the crimes. "We review de novo a district court's denial of a motion for judgment of acquittal." United States v. Cannon, 475 F.3d 1013, 1020 (8th Cir.), cert. denied, 128 S. Ct. 365 (2007). Upon reviewing the evidence in the light most favorable to the government, id., we find sufficient evidence to support both convictions.

The jury convicted Turner as a principal for the crime of manufacture of methamphetamine because he aided and abetted Sanders in the manufacture of methamphetamine at 3850 Fountain City Road. See 18 U.S.C. § 2 ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.") The three elements of aiding and abetting are that: "(1) the defendant associated [himself] with the unlawful venture; (2) the defendant participated in it as something [he] wished to bring about; and (3) the defendant sought by [his] actions to make it succeed." United States v. Mitchell, 388 F.3d 1139, 1143-44 (8th Cir. 2004). Although Turner claims he was only in the residence for five minutes prior to the detectives' arrival at the residence, none of the detectives observed anyone entering the house while they gathered in front of the residence to assess the situation, or when they approached the home, and the patrol officer did not mention seeing anyone enter or exit the home. Turner's presence at the residence, the numerous methamphetamine-related products present, and the large quantity of methamphetamine discovered, combined with the overwhelming odor of methamphetamine in the residence, provides sufficient evidence for a reasonable jury to find that Turner was not just an innocent bystander, yet was associated with, actively participated in, and sought the success of the manufacture of methamphetamine with Sanders.

To establish a conspiracy to manufacture methamphetamine, the government must prove that: "(1) a conspiracy existed; (2) [the defendant] knew of the conspiracy; and (3) [the defendant] knowingly became a part of the conspiracy." United States v. Davidson, 195 F.3d 402, 406 (8th Cir. 1999). The third factor "requires proof that the defendant entered into an agreement with at least one other person . . . ." United States v. Salvador, 426 F.3d 989, 992 (8th Cir. 2005). Even when there is no direct proof of a conspiracy, "the jury is free to consider all the evidence—direct and indirect—presented of the defendant's statements and actions" and they may "draw reasonable inferences from the evidence presented about what the defendant's state of mind was when he did or said the things presented in the evidence." United States v. Wilson, 103 F.3d 1402, 1406-07 (8th Cir. 1997).

Through reasonable inference, the methamphetamine evidence discovered at the residence establishes that a conspiracy to manufacture methamphetamine existed between Sanders and Turner. The testimony involving Turner's past connection to methamphetamine manufacture demonstrated that Turner knew what methamphetamine looked like, and that he was aware of its manufacturing process. A jury could also reasonably connect Turner to the conspiracy because he had manufactured methamphetamine with other people in the past, and was present in the area containing the large amount of methamphetamine paraphernalia. Furthermore, Turner did not open the door when the police knocked and announced, but went to the basement and paced nervously, suggesting his knowledge of and involvement in the manufacture of methamphetamine. See United States v. Barajas, 474 F.3d 1023, 1026 (8th Cir. 2007) (holding that a jury could interpret a defendant acting "exceptionally nervous" as "suggesting a consciousness of guilt"). Therefore, we find sufficient evidence to support the conspiracy conviction.

## C.

Finally, Turner contends that the mandatory minimum sentence of 120 months imprisonment violated his rights under the Due Process Clause, the Equal Protection Clause, and the Eighth Amendment. We disagree. It is clearly established that mandatory minimum sentences are constitutional—even for sentences longer than 120 months. United States v. Prior, 107 F.3d 654, 658-60 (8th Cir. 1997) (holding a mandatory life sentence for possession with intent to distribute methamphetamine constitutional). Therefore we find that Turner's 120-month sentence is constitutional.

## III.

Accordingly, we affirm the judgment of the district court.

_____