# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 14-2146

———————————————

United States of America

*Plaintiff - Appellee*

v.

Leslie Armstrong

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

——————————

Submitted: January 16, 2015
Filed: April 10, 2015

——————————

Before COLLOTON, BEAM, and KELLY, Circuit Judges.

——————————

BEAM, Circuit Judge.

The district court[1] sentenced Leslie Armstrong to 180-months' imprisonment following his conviction by a jury of one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On appeal, Armstrong challenges the sufficiency

——————————

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

of the evidence supporting his conviction and claims the district court erred by admitting evidence of a prior controlled drug sale in which he was allegedly involved and by sentencing him as a career offender. We affirm.

## I.    BACKGROUND

On December 4, 2012, the government charged Armstrong in a one-count indictment with distribution of 12.5 grams of crack cocaine. This charge stemmed from Armstrong's alleged sale of crack cocaine to a confidential informant (CI) during a controlled buy that occurred in September 2009 (the "2009 Controlled Buy"). At the time of the 2009 Controlled Buy, the CI was working with the Drug Enforcement Agency (DEA) and local law enforcement and had already participated in several controlled buys involving different suspected drug dealers.

At trial, the government introduced substantial evidence regarding how the 2009 Controlled Buy unfolded and Armstrong's role in the buy. On the day of the buy, the CI met with DEA and local law enforcement officials at a confidential location. The officers thoroughly searched the CI to verify that he did not have any weapons, drugs, or money on his person. The CI then placed a call to a phone number he claimed belonged to Armstrong. At trial, the government played a recording of this call, and the CI can be overheard talking with a man and confirming that the man was ready to make the drug sale. Armstrong denies that he participated in the call, but the CI testified that the other voice in the recording belonged to Armstrong. The CI also testified that he was familiar with Armstrong's voice because he lived in the same apartment complex as Armstrong, had known him for years, and had purchased drugs from Armstrong on occasions prior to the 2009 Controlled Buy.

After the call, officers provided the CI with money to buy the drugs, placed an audio/video recording device on his clothing, and used a DEA vehicle to transport the CI to the apartment complex in which Armstrong lived. The CI exited the DEA

vehicle and walked up to the apartment complex.[2]   The CI proceeded directly to Armstrong's apartment, although he apparently encountered several people, including a family member, along the way.  The CI testified that, upon entering Armstrong's apartment, he paid Armstrong $700 in exchange for two baggies of crack cocaine. The government showed the jury footage that was captured by the audio/video recorder the CI wore during the buy.   This footage, in relevant part, depicts the CI knocking on the door of Armstrong's apartment, receiving permission to enter, and handing something to Armstrong.  Armstrong appears to examine the item(s) for several seconds, and then states "you paid me for two."  The footage then depicts Armstrong handing something to the CI, after which the CI exits the apartment. However, due to the angle of the recorder, the footage does not clearly show Armstrong possessing any money or drugs during the buy.

After the CI exited the apartment, he immediately returned to the DEA vehicle and gave two baggies to the officers who had escorted him to the buy.  The officers thoroughly searched the CI and verified that he had no additional drugs, weapons, or currency on his person.  The government's forensic analyst testified that the baggies contained 12.5 grams of cocaine base.  As noted above, Armstrong was not indicted on charges related to the 2009 Controlled Buy until December 2012.

Pursuant to Rule 404(b) of the Federal Rules of Evidence, the government filed a notice of intent to introduce evidence at trial related to Armstrong's prior felony drug convictions and his participation in a 2007 crack cocaine sale (the "2007 Controlled Buy") for which he was never charged.  With respect to the 2007 Controlled Buy, the government disclosed that this transaction involved the same CI as did the 2009 Controlled Buy.  Armstrong objected to all of the government's proposed 404(b) evidence but took particular issue with the evidence related to the

---

[2]At this point, the CI was out of the officers' sight; however, the audio/video device continued to record the CI's activities.

2007 Controlled Buy. Specifically, Armstrong contended there was insufficient evidence that he actually participated in the buy and that the government's sole purpose in admitting this evidence was to show his propensity to commit the 2009 drug offense. At the parties' pretrial conference, the government claimed that Armstrong had asserted a general denial defense and that evidence of his role in the 2007 Controlled Buy was therefore relevant to show intent and knowledge with respect to the 2009 drug offense. The district court agreed the evidence was admissible but informed the parties that it would provide a limiting instruction. Armstrong has not challenged the government's characterization of his defense.

At trial, the CI was the first witness to provide substantive testimony about the 2007 Controlled Buy. Before allowing this testimony, the district court instructed the jury that evidence of the 2007 Controlled Buy was being offered only to help them decide whether Armstrong was the person who distributed crack cocaine to the CI during the 2009 Controlled Buy and whether Armstrong had the requisite intent to do so. The district court further admonished the jury that they could consider this evidence only if they unanimously found it was more likely true than not true, that this was a lower standard of proof than that required to convict Armstrong of the 2009 drug offense, and that they could not convict Armstrong merely because he had committed similar acts in the past.[3]

Following this instruction, the CI testified that in August 2007 he participated in a controlled buy that targeted another suspected drug dealer. The CI testified that when he arrived at the target's residence, the target told the CI that he did not have any drugs but could get some from "Wez," which is Armstrong's street name. The CI testified that he and the target then waited approximately thirty minutes for

_____

[3]The district court repeated these instructions to the jury shortly before the parties provided closing arguments. In addition, during closing arguments both the prosecution and the defense explicitly told the jury that evidence regarding the 2007 Controlled Buy was relevant only to the defendant's knowledge and intent.

Armstrong to arrive. At some point during this wait, the CI exited the target's apartment and returned to the DEA vehicle that was used to transport him to the buy location. The CI told the officers that Armstrong was bringing drugs to the buy location, that Armstrong had previously committed a violent crime against one of the CI's family members, and expressed excitement that "we can get Leslie Armstrong, we can get him good." The CI then returned to the target's apartment, and Armstrong arrived shortly thereafter. The CI testified that, although he did not directly see the target receive drugs from Armstrong, the target provided a baggy to the CI shortly after Armstrong arrived. The government presented testimony from a forensic analyst who stated that the baggy contained cocaine base. In addition, the government also provided audio/video footage and surveillance photos that depict Armstrong entering the target's residence shortly before the CI received drugs from the target. Finally, both officers who participated in the 2007 Controlled Buy testified that the CI was thoroughly searched before and after the buy and that Armstrong was not the intended target of the buy. Neither the target nor Armstrong were ever charged in connection with their participation in the 2007 Controlled Buy.

At trial, the defense marshaled a heavy attack against the CI's credibility. During direct and cross-examination, the CI frankly acknowledged that he despised Armstrong because Armstrong had committed a violent crime against one of the CI's family members several years before either controlled buy occurred. The CI further admitted that he had numerous felony convictions, had been convicted of filing a false police report, had lied to his parole officer about his drug use, and had violated his parole on multiple occasions. The defense also presented three character witnesses who testified that the CI had a poor reputation for truthfulness in the community. In addition, the CI acknowledged that he was a cocaine addict and had used drugs in the months following the 2009 Controlled Buy. However, multiple law enforcement officials who observed the CI during the buy testified that he showed no signs of being high and that they would be willing to use the CI as an informant in the future because the information he provided was always reliable.

The jury ultimately convicted Armstrong of distributing crack cocaine to the CI during the 2009 Controlled Buy. Before sentencing, the United States Probation Office prepared a presentence investigation report (PSR). The PSR calculated that Armstrong had three prior felony convictions that were either a crime of violence or a controlled substance offense and therefore recommended that he be sentenced as a career offender under Section 4B1.1 of the United States Sentencing Guidelines Manual (U.S.S.G.). Specifically, the PSR noted that in 1993 Armstrong pled guilty to a manslaughter charge related to a killing that took place in 1991. The PSR also stated that Armstrong was convicted of two separate crack cocaine distribution offenses, one of which took place on June 1, 1991 (the 1991 Drug Offense), and the other on December 28, 1992 (the 1992 Drug Offense).

Armstrong objected to the PSR's recommendation that he be classified as a career offender. With respect to the manslaughter conviction, Armstrong contended that the Arkansas manslaughter statute under which he was convicted was divisible and that the charging documents could not resolve whether his manslaughter conviction constituted a crime of violence. Armstrong also argued that his convictions for the 1991 and 1992 drug offenses should be counted as one conviction for purposes of U.S.S.G. § 4B1.1 because these offenses were not separated by an intervening arrest and he was sentenced for the offenses on the same day. The district court sustained Armstrong's objection with respect to the manslaughter conviction, and the government has not appealed that decision. However, the district court concluded that Armstrong's 1991 and 1992 drug offenses were separated by an intervening arrest and therefore sentenced him as a career offender. Armstrong appeals.

## II.    DISCUSSION

### A.    Rule 404(b) Evidence

Armstrong contends the district court erred by permitting the government to present evidence about his role in the 2007 Controlled Buy. "[W]e review the district court's Rule 404(b) ruling for an abuse of discretion." United States v. Turner, 583 F.3d 1062, 1065 (8th Cir. 2009) (alteration in original) (quotation omitted). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). "Prior bad act evidence is admissible, however, when introduced for any other purpose," including to show identity, knowledge or intent. Turner, 583 F.3d at 1065; see Fed. R. Evid. 404(b). Nonetheless, even if introduced for a proper purpose, to be admissible, prior bad act evidence "must be: (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." United States v. Jourdain, 433 F.3d 652, 659 (8th Cir. 2006) (quotation omitted). Rule 404(b) is "a rule of inclusion rather than exclusion, and we will reverse a district court's admission of prior act evidence only when such evidence clearly ha[s] no bearing on the issues in the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Turner, 583 F.3d at 1065 (alteration in original) (internal quotation omitted).

On appeal, Armstrong does not challenge the government's contention that the 2007 Controlled Buy is similar in kind and close in time to the 2009 drug offense. Armstrong argues, however, that this 404(b) evidence was inadmissible because it was relevant only to his propensity to commit the 2009 drug offense. Armstrong also contends the government failed to prove his involvement in the 2007 Controlled Buy by a preponderance of the evidence. We find these arguments unpersuasive.

"In order to find that [Armstrong] violated § 841(a)(1), the jury was required to find that he knowingly possessed cocaine base and that he intended to distribute the cocaine base." United States v. Jenkins, 758 F.3d 1046, 1049 (8th Cir. 2014). Our precedent clearly establishes that Armstrong placed his state of mind at issue by asserting a general denial defense. United States v. Banks, 706 F.3d 901, 907 (8th Cir. 2013). Evidence of Armstrong's role in the 2007 Controlled Buy therefore was relevant to proving material elements of the 2009 drug offense for which he was charged–namely his knowledge and intent. United States v. Thomas, 58 F.3d 1318, 1321 (8th Cir. 1995).

We also hold the government proved Armstrong's role in the 2007 Controlled Buy by a preponderance of the evidence. "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 689 (1988). "Such questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b)." Id. Rule 104(b) provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). In making this determination, the court does not weigh the evidence or make credibility determinations, but instead "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [here, that Armstrong supplied the drugs the CI purchased in the 2007 Controlled Buy] by a preponderance of the evidence." Huddleston, 485 U.S. at 690. If, after the Rule 404(b) evidence is presented to the jury, the trial court determines that a reasonable jury could not conclude the defendant committed the prior act, then it "must instruct the jury to disregard the evidence." Id.

Here, the district court did not abuse its discretion by determining a reasonable jury could conclude Armstrong provided the drugs the CI purchased during the 2007 Controlled Buy. The CI's trial testimony and the audio/video recording of the buy

establish the target told the CI that he would have to get the drugs from "Wez," that the CI indicated to the officers on scene that "Wez" was Leslie Armstrong, that Armstrong arrived at the apartment shortly thereafter, and that the target provided drugs to the CI within minutes of when Armstrong entered the apartment. Based on this evidence, a reasonable jury could have found it more likely than not that Armstrong was the supplier. See United States v. Sykes, 977 F.2d 1242, 1246 (8th Cir. 1992). Accordingly, "[t]he trial court's decision to admit the Rule 404(b) evidence cannot be overturned." Id.

## B.      Sufficiency of the Evidence

Armstrong next contends there was insufficient evidence supporting his conviction for the 2009 drug offense. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Harris-Thompson, 751 F.3d 590, 598 (8th Cir.) (quotation omitted), cert. denied, 135 S. Ct. 415 (2014). "[W]e will reverse only if no reasonable jury could have found [Armstrong] guilty beyond a reasonable doubt." United States v. McCraney, 612 F.3d 1057, 1063 (8th Cir. 2010).

Armstrong's primary argument essentially is that the testimony of the CI was unreliable. However, "[t]he jury is responsible for assessing the credibility of witnesses" and its credibility determinations "are virtually unreviewable on appeal." United States v. Thompson, 560 F.3d 745, 748-49 (8th Cir. 2009) (internal quotation omitted). Here, Armstrong's attorneys cross-examined most of the government's witnesses, including the CI, extensively, regarding the CI's felony convictions, his history of lying to law enforcement officials, and his well-documented animus towards Armstrong. Armstrong also presented multiple character witnesses who attacked the CI's reliability. In spite of this evidence, "[t]he jury evidently chose to

credit [the CI's] testimony despite his checkered background and potential bias, and we will not disturb its judgment." McCraney, 612 F.3d at 1063. Furthermore, the government's audio/video footage of the events that took place inside Armstrong's apartment corroborates the CI's testimony. Although this footage does not directly show the hand-to-hand exchange of drugs and money, the jury could have reasonably accepted the CI's explanation that the footage depicted such an exchange. See id. In addition, the footage clearly captures Armstrong saying "you paid me for two," and the jury could have reasonably inferred this statement referred to the two baggies of crack cocaine the CI later surrendered to law enforcement officials. Finally, as discussed above, the Rule 404(b) evidence was relevant to Armstrong's knowledge and intent to commit the 2009 drug offense. This evidence, when taken as a whole, is sufficient to support the jury's verdict.

## C.    Career Offender

Armstrong argues that the district court erred by sentencing him as a career offender under U.S.S.G. § 4B1.1. We review the district court's interpretation and application of the Sentencing Guidelines de novo and review its application of the Guidelines to the facts for clear error. United States v. Jenkins, 578 F.3d 745, 749 (8th Cir. 2009). Section 4B1.1 provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Armstrong concedes that the first two elements of § 4B1.1 are satisfied but contends that his convictions for the 1991 and 1992 drug offenses should

be counted as one predicate felony conviction for purposes of the career offender provision. Section 4B1.2(c) of the Guidelines provides that the term "two prior felony convictions" means the defendant committed the instant offense of conviction after sustaining at least two predicate felony convictions and that "the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c)." U.S.S.G. § 4B1.2(c). Section 4A1.2(a)(2) clarifies that for purposes of applying § 4A1.1:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

U.S.S.G. § 4A1.2(a)(2). The parties agree that Armstrong's sentences for the 1991 and 1992 drug offenses were imposed on the same day and that the offenses were not contained in the same charging instrument. Therefore, the sole question before us is whether the two offenses were separated by an intervening arrest.

The facts relevant to the issue of whether the 1991 and 1992 drug offenses were separated by an intervening arrest are essentially undisputed. On or around November 27, 1991, Armstrong was arrested by the Jackson County Sheriff's Office on a first-degree murder charge for the killing that ultimately resulted in his manslaughter conviction. On December 10, 1991–while Armstrong was still in custody on the murder charge–a member of the sheriff's department served Armstrong with a bench warrant for the 1991 Drug Offense and informed Armstrong of the drug charge. The record indicates that the sheriff's department did not release Armstrong before serving the warrant, nor did it repeat its normal booking procedures, such as

fingerprinting and photographing Armstrong. Armstrong remained in custody until August 12, 1992, when he posted bond for both the murder and drug charges. On December 28, 1992, Armstrong sold crack cocaine to a confidential informant, and he was arrested the following day. During the arrest, officers searched Armstrong's person and discovered he was carrying crack cocaine. On June 15, 1993, Armstrong pled guilty to the 1991 and 1992 drug offenses and was sentenced for both offenses that same day.

Armstrong contends he was never arrested for the 1991 Drug Offense because he was already in custody when officers served him with the bench warrant. In other words, Armstrong seemingly argues that being detained on a charge does not count as an arrest unless officers actually apprehend the offender for the purpose of facing that charge. Armstrong cites no legal authority for this proposition and instead urges us to define the term "arrest" according to the procedures of arrest set forth in the Arkansas code. Ark. Code Ann. § 16-81-107(e). We decline this invitation. "The Guidelines reflect the will of Congress and a Congressional desire for uniform and fair sentencing." United States v. Townsend, 408 F.3d 1020, 1023 (8th Cir. 2005). By interpreting the term "arrest" according to "the vagaries of state law," we would risk disrupting uniform application of the Guidelines. Taylor v. United States, 495 U.S. 575, 588 (1990); accord United States v. Leal-Felix, 665 F.3d 1037, 1041 (9th Cir. 2011). We instead hold that our best course is to define the term according to "a uniform, national definition."[4] Leal-Felix, 665 F.3d at 1041 (quotation omitted).

---

[4]Armstrong alternatively contends that by serving the warrant on him the officers merely created a detainer but did not effect an actual arrest. This argument is unpersuasive. In normal parlance, "[a] detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." Carchman v. Nash, 473 U.S. 716, 719 (1985). The record indicates that a member of the Jackson County Sheriff's Office served the warrant while Armstrong was already in the custody of that same department; we

"We employ basic rules of statutory construction when interpreting the Guidelines." United States v. Hackman, 630 F.3d 1078, 1083 (8th Cir. 2011).

"Endeavoring to ascertain the ordinary meaning of a word," we often begin by looking at a dictionary. Id. Black's Law Dictionary defines the term "arrest" as "(1) A seizure or forcible restraint [or] (2) [t]he taking *or keeping of a person in custody* by legal authority, esp. in response to a criminal charge." Black's Law Dictionary 130 (10th ed. 2014) (emphasis supplied). Although a number of our sister circuits have disagreed regarding the degree of restraint necessary to effect an arrest for purposes of the Guidelines, compare Leal-Felix, 665 F.3d at 1044 (traffic stop and issuance of citation not an arrest) with United States v. Morgan, 354 F.3d 621, 623-24 (7th Cir. 2003) ("A traffic stop is an 'arrest' in federal parlance."), it is abundantly clear that being jailed to face charges amounts to an arrest. Atwater v. City of Lago Vista, 532 U.S. 318, 323-25 (2001). Furthermore, although Armstrong was not "apprehended" for the 1991 Drug Offense, we see no meaningful difference between the circumstances of his detention and those of an offender who is apprehended and jailed solely on a drug charge. Armstrong was explicitly informed of his drug charge via the bench warrant, was detained in jail for nearly nine months on both the drug and murder charges, and was required to post bond for both charges before being released. We therefore hold that Armstrong was subject to an intervening arrest for purposes of the Guidelines. Accordingly, the district court did not err by sentencing Armstrong as a career offender.

## III. CONCLUSION

For the reasons stated herein, we affirm Armstrong's conviction and sentence.

---

decline to hold that the Jackson County Sheriff's Office served a detainer on itself.

-13-

KELLY, Circuit Judge, concurring.

I concur in the court's opinion. I write separately because I consider evidence of the 2007 controlled buy admissible for a different reason. Regarding Armstrong's argument that the evidence of his involvement in the 2007 controlled buy was not sufficiently reliable, I agree that the government proved Armstrong's involvement in that transaction by a preponderance of the evidence. On appeal, Armstrong also argues that this evidence was offered solely as propensity evidence. Yet, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Here, when objecting to the admission of all proposed Rule 404(b) evidence in the district court, his attorney expressly stated that she had "evidence that the confidential informant has a spoken vendetta against Mr. Armstrong." Then, in her opening statement, Armstrong's counsel told the jury that "the reason we are here is because [the confidential informant] has an ax to grind." In my view, based on the record below, it is that specific defense—that the CI had falsely accused Armstrong of selling drugs as vengeance for Armstrong's role in the death of the CI's father—and not a "general denial" defense that renders evidence about the 2007 controlled buy admissible. Evidence that the CI had unexpectedly encountered Armstrong as a participant in a controlled buy two years earlier was thus admissible to counter the specific defense Armstrong proffered. See Fed. R. Evid. 404(b)(2); cf. United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002) (evidence of prior drug convictions admissible in part to rebut "mere presence" defense).

_____