# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2633

_____

United States of America

*Plaintiff - Appellee*

v.

Jade Shilo Oldrock

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: May 12, 2017
Filed: August 14, 2017

_____

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

SMITH, Chief Judge.

Jade Shilo Oldrock was convicted of the aggravated sexual abuse of a child and committing a felony sex offense as a registered sex offender, pursuant to 18 U.S.C. §§ 1153, 2241(c), 2247, 3559(e), and § 2260A. The district court[1] sentenced Oldrock

_____

[1]The Honorable Ralph R. Erickson, United State District Judge for the District of North Dakota.

to the statutory mandatory minimum sentence for each offense, which amounted to a total of 40 years' imprisonment. Oldrock appeals his conviction, claiming that the district court abused its discretion by admitting unduly prejudicial testimony from two witnesses at trial and by denying his motion for mistrial. We affirm.

## I. *Background*

H.L., a minor, stayed up late watching a movie at her home in Fort Totten, North Dakota. She fell asleep on the couch. Oldrock, H.L.'s relative, was homeless at the time and intermittently sleeping over at the family residence. H.L. awoke in the night to find her blue jeans unzipped and Oldrock lying next to her using his hand to reach inside her underwear and touch her genitals. She got up and rushed upstairs to her bedroom. H.L. attempted to barricade her bedroom door with books and "anything else [she] could find" because the lock was broken. H.L. changed into loose-fitting trunks and a tank top and "bundled [herself] up in a blanket." She eventually fell back asleep.

H.L. awoke once again. Oldrock had gained entry to her bedroom and was sitting on her bed with his hand underneath her trunks. She sat up, and Oldrock got off the bed. He immediately went to a box of old phones on the night stand and began asking H.L. about them. H.L. sat in silence until Oldrock left the room. When she heard what sounded like Oldrock exit the front door, H.L. "waited to make sure he was gone." She then left the house and walked to her older sister's home—where she ordinarily got ready for school in the morning. H.L. quietly entered her nieces and nephews' bedroom and crawled into bed.

About four months later, H.L. told her older sister about Oldrock's actions. The two sisters notified their father, and the three of them went to the police station to make a report. Per protocol, law enforcement arranged for H.L. to be interviewed at the Red River Children's Advocacy Center (RRCAC) in Fargo, North Dakota. Jill Perez, the program coordinator and a forensic interviewer for RRCAC, interviewed

H.L. The facts developed in this interview led to Oldrock's indictment. Investigators interviewed another minor, T.O., about an unrelated incident. During this interview, T.O. described a similar encounter with Oldrock. One night while staying at Oldrock's home, T.O. awakened to Oldrock's hand underneath her pajamas, touching her genitals.

Oldrock moved to exclude the testimony of T.O. and Perez. The district court denied Oldrock's motion as to T.O., subject to a judicial relevance finding, and granted Oldrock's motion as to Perez, except "as to whether or not the techniques used [in the interview] were consistent with her training." At trial, T.O. and Perez generally testified within these parameters. On direct examination, however, the government elicited one response from Perez that went beyond the district court's limitations:

> The recommendations that we had for [H.L.] that day were trauma counseling, no contact with Jade Shilo Oldrock, and a medical examination.

Defense counsel immediately moved to strike this statement, and the court granted the motion, instructing the jury to disregard the answer. Defense counsel subsequently moved for a mistrial based on this statement, which the court denied. After three days of trial, the jury convicted Oldrock.

## II. *Discussion*

On appeal, Oldrock argues that the district court abused its discretion by admitting unduly prejudicial testimony from T.O. and Perez and for denying his motion for mistrial. We examine these arguments in turn.

## A. *T.O.'s Testimony*

"We review a district court's evidentiary rulings for abuse of discretion." *United States v. Never Misses A Shot*, 781 F.3d 1017, 1027 (8th Cir. 2015). "Reversal is warranted only if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion," *id.*, or "when the ruling affected substantial rights or had more than a slight influence on the verdict," *United States v. Street*, 548 F.3d 618, 624 (8th Cir. 2008) (quoting *United States v. Gustafson*, 528 F.3d 587, 590 (8th Cir. 2008)).

Evidence of prior bad acts is generally inadmissible to show a defendant's propensity to commit the charged crime. But, Congress adopted Federal Rule of Evidence 413 to allow such evidence in sex-offense cases. *See United States v. Hollow Horn*, 523 F.3d 882, 887 (8th Cir. 2008). Prior bad acts constituting sex offenses may be admitted to prove any relevant matter "including the defendant's propensity to commit such offenses." *Id.* (quoting *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001)). "A relevant sexual assault is one committed in a manner similar to the charged offense." *Never Misses A Shot*, 781 F.3d at 1027 (quoting *United States v. Rodriguez*, 581 F.3d 775, 796 (8th Cir. 2009)). After the district court finds Rule 413 evidence relevant, "admissibility hinges on whether the testimony's probative value is substantially outweighed by one or more of the factors enumerated in Rule 403." *Id.* This determination is "accorded great deference." *Id.* (quoting *United States v. Crow Eagle*, 705 F.3d 325, 328 (8th Cir. 2013) (per curiam)).

Oldrock argues that the district court abused its discretion in determining whether T.O.'s testimony met the relevance test. Under Federal Rule of Evidence 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b); *see also United States v. Armstrong*, 782 F.3d 1028, 1034–35 (8th Cir. 2015) (explaining Rule 104(b)). "In making this determination, the court does not weigh the evidence or make credibility determinations, but instead 'simply examines

all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.'" *Armstrong*, 782 F.3d at 1034–35 (quoting *Huddleston v. United States*, 485 U.S. 681, 690 (1988)). Oldrock argues that T.O.'s testimony fails this relevancy test because it changed "in two critical ways" between her original forensic interview and her testimony at trial. Oldrock contends that T.O. (1) initially reported that Oldrock touched her upper thigh but later testified to him touching her genitals, and (2) initially suggested that the incident happened more than once but on the stand clarified that it was a single encounter.[2]

The district court conducted a hearing on T.O.'s testimony to determine Rule 104 relevance. In that hearing, T.O. explained that during her initial forensic interview she was "angry" and "hungry," and that this emotional state kept her from telling the full truth. Her parents had just been arrested and she felt like she had "failed" to care for her younger siblings—all of whom were taken into the custody of child protective services. In describing the interview, T.O. said that the interviewer "kept asking about events that I never talk about and she kept asking me to say the words that I didn't want to say." In assessing this testimony, the district court made the following findings:

> Now if you watch the video, the forensic interview video, and you watch it carefully I think what we're really dealing with here is an imprecision on the part of this child as to reporting her emotional state, right? She says angry and it's apparent that what she means to say is frustrated, all right? And her frustration is actually fairly apparent in the video. I mean, as a parent of young children when you do that deal where you lay down in the middle of the chair kind of demonstrating like this (indicating)

---

[2]Oldrock also argues that T.O. committed perjury while testifying, but the record reflects T.O.'s confusion in answering some questions and her attempt to clarify her statements for truthfulness.

that's a pretty clear indication of frustration, like they're sending a message: I'm [bored]. I'm tired of this. I don't want to talk to you.

*\*\**

It's also apparent that the focus of this interview was not to find out if Jade Shilo Oldrock had at any point had any inappropriate sexual contact with [T.O.] but to find out whether or not [T.O.'s] father was guilty of physical abuse against her and whether or not [T.O.] observed physical abuse of her siblings by her father.

*\*\**

By the time they finally get back to any discussion about Mr. Oldrock's involvement in the case [T.O.] is once again demonstrating signs that she's had enough of this discussion.

Combining T.O.'s explanation for her story change and the video of the forensic interview, the court determined that a preponderance of evidence established the foundation for T.O.'s testimony. We agree. T.O.'s testimony and subsequent explanation show the relevance of the prior bad act. The crux of Oldrock's claim is that T.O.'s changed story negates its credibility and thus its relevance to the current crime. If believed, T.O.'s testimony would render Oldrock's prior conduct relevant to the instant offense. The inconsistency in T.O.'s testimony may damage its credibility, but it does not negate its competence as the court found that a preponderance of the evidence supported the existence of the facts T.O. represented.

T.O.'s testimony met the relevance standard, and its probative value is not outweighed by unfair prejudice under Federal Rule of Evidence 403. "Rule 413 evidence is always prejudicial, but Rule 403 only prevents *unfairly* prejudicial evidence." *United States v. Strong*, 826 F.3d 1109, 1114 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 1578 (2017). The court found the evidence highly probative because of the "similarity in age" and "similarity in the touching" and found that any prejudice could

be limited by a cautionary instruction to the jury. Noting that Congress had "an intent to expand the admissibility of propensity evidence" in drafting Rule 413, the court determined that T.O.'s testimony passed the Rule 403 balancing test. The district court did not abuse its discretion. T.O.'s testimony is prejudicial for the same reason that it is probative. It shows Oldrock's propensity to touch young females inappropriately while they sleep. *See Hollow Horn*, 523 F.3d at 888. "Because this specific type of propensity evidence is admissible under Rule 413, [Oldrock] has not shown that its prejudice was *unfair*." *See id.*

B. *Perez's Testimony*

Oldrock raises two challenges to Perez's testimony. He argues that the district court abused its discretion in admitting her testimony because it lacked relevance and served as improper expert testimony. He also argues that Perez's improper statement regarding her recommendations for H.L. constituted prejudicial vouching. Oldrock contends that the district court abused its discretion by failing to grant a mistrial on this basis.

1. *Relevance*

Oldrock claims that Perez's testimony fails the relevance standard of Federal Rule of Evidence 401 because it lacks "any tendency to make a fact more or less probable." Fed. R. Evid. 401(a). Perez's testimony, however, was presented to describe the process of the forensic interview, to explain the lack of physical evidence, to describe the investigative process, and, in the government's words, to help "foreclose any argument that the forensic interview process itself influenced the victim's testimony." Oldrock claims that these reasons lack relevance to the main issue at trial—his guilt. This argument, however, misunderstands Rule 401, under which "[t]he standard for relevancy is low." *United States v. Holmes*, 751 F.3d 846, 851 (8th Cir. 2014). If there is "any tendency" that evidence will make a consequential fact more or less probable, the "[e]vidence should be admitted." *Id*.

In *United States v. Littlewind*, we affirmed the admission of similar testimony because it "provided relevant information which helped the jury understand [the] investigative process." 680 F. App'x 496, 498 (8th Cir. 2017) (per curiam). In this case, Perez's testimony was relevant to help the jury understand the process of the forensic interview and explain how the investigation proceeded—as "[t]he drafters of the rule point out that '[e]vidence which is essentially background in nature' is often considered relevant and 'admitted as an aid to understanding' the case." *See id.* (second alteration in original) (quoting Fed. R. Evid. 401 advisory committee's note to 1972 proposed rule). Perez's testimony meets the Rule 401 relevance standard.

### 2. *Lay Testimony*

Next Oldrock claims that Perez, testifying as a lay witness under Federal Rule of Evidence 701, offered impermissible expert testimony without being qualified as an expert under Federal Rule of Evidence 702, and that the district court abused its discretion by allowing this admission. "Rule 701 provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inferences is limited to those that are rationally based on the witness's perception and helpful to understanding the witness's testimony or determining a fact in issue." *United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010) (quoting *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009)). "[P]erceptions based on *industry experience* [are] a sufficient foundation for lay opinion testimony." *Id.* (alterations in original) (quoting *U.S. Salt, Inc.*, 563 F.3d at 690).

The district court granted Oldrock's motion to exclude expert testimony from Perez, but the court permitted Perez to testify to her lay perceptions of H.L.'s interview. In *Smith*, we determined that a forensic interviewer could "give her lay opinion based on her personal knowledge and perception" of a minor and describe "her experience performing forensic interviews of allegedly abused children" without offending Rule 702. *Id.* at 983. Because the interviewer relied "exclusively on her experience observing other sexually abused children and her personal perception[s]"

and "did not refer to any 'scientific, technical, or other specialized knowledge' in stating her opinion," we determined that "the district court acted within its considerable discretion." *Id.* The same reasoning applies here. The district court did not abuse its discretion in allowing Perez to discuss the forensic process and her personal opinions of H.L.'s interview.

### 3. *Denial of Mistrial*

Finally, Oldrock claims that Perez impermissibly vouched for H.L. by mentioning her recommendations for H.L., and that the district court abused its discretion in denying his motion for mistrial. "We review a motion for mistrial under an abuse of discretion standard." *United States v. Espinosa*, 585 F.3d 418, 428 (8th Cir. 2009). "The district court has broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect of improper testimony, and because less drastic measures such as a cautionary instruction are generally sufficient to alleviate prejudice flowing from improper testimony." *Id.* (quoting *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997)). The normal cure for a witness's improper statement is the striking of the testimony with an instruction for the jury to disregard it. *Id.* "We assume that the jury followed the district court's instruction." *Id.* (quoting *United States v. Fletcher*, 322 F.3d 508, 516 (8th Cir. 2003)).

Here, the district court immediately struck the "offending" statement and instructed the jury to disregard it. When Oldrock moved for a mistrial based on the statement, the court said:

> I think that the Court has stricken the evidence. I don't see it as particularly prejudicial. It's slight in comparison to all the other evidence that's been received, if there's any prejudice at all. The jury I think is diligent, honest, and I believe that they will set it aside.

Despite the strike and the curative instruction, Oldrock argues that Perez's statement created incurable prejudice because it impermissibly vouched for H.L. by implying that Perez believed that (1) H.L. suffered a trauma; (2) Oldrock committed that trauma; and (3) the trauma was sexual in nature. Perez's statement, however, does not necessarily imply any such beliefs. She testified that the recommendation of a medical exam is typically scheduled for any allegation of "skin-to-skin contact." Counseling is typical for children complaining of assault, and it is reasonable to tell a child to stay away from her alleged attacker, regardless of that person's guilt or innocence. Fundamentally, Oldrock argues that the statement provided impermissible vouching for H.L.'s credibility. *See United States v. Roundtree*, 534 F.3d 876, 880 (8th Cir. 2008) ("Improper vouching may occur when the government expresses a personal opinion about credibility, implies a guarantee of truthfulness, or implies it knows something the jury does not."). Unlike a typical vouching case, here the government made no statements implying a guarantee of H.L.'s credibility. Rather, a witness incidentally named Oldrock when she discussed her treatment recommendations for the victim. This naming was immediately struck, which distinguishes Oldrock's case from the cases in which the district court improperly admitted impermissible hearsay from medical providers or social workers. *See, e.g.*, *United States v. Bercier*, 506 F.3d 625, 633 (8th Cir. 2007) (rejecting as hearsay medical testimony unrelated to the diagnosis); *United States v. Azure*, 845 F.2d 1503, 1507 (8th Cir. 1988) (finding victim's out-of-court identification harmless). The record contains no basis to conclude that the jury did not follow the court's curative instruction to ignore this statement.

"It is generally within the discretion of the district court to decide whether the fairness of a trial has been compromised by prejudicial testimony . . . ." *Espinosa*, 585 F.3d at 428 (ellipsis in original) (quoting *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008)). In *Espinosa*, we held that the district court did not abuse its discretion in denying a motion for mistrial after the court struck a similar statement by a witness who vouched for the credibility of a sexual assault victim. *Id.* at 429. In

light of H.L.'s testimony and the other evidence presented at trial, we find that the district court did not abuse its discretion in denying Oldrock's motion for a mistrial.

### III. *Conclusion*

Accordingly, we affirm the district court's judgment.

KELLY, Circuit Judge, dissenting.

In my view, the district court abused its discretion by allowing Perez to testify about the forensic process and her opinions of H.L.'s interview. Perez' testimony "presented a serious risk that the jury would believe she had special insight into the veracity of [H.L.]'s allegations—improperly bolstering [H.L.]'s credibility." Littlewind, 680 F. App'x at 499 (Kelly, J., dissenting). The admission of this testimony was not harmless error, because the jury's assessment of H.L.'s credibility "was of paramount importance to the verdict." Id. Accordingly, I respectfully dissent from Part B of the court's opinion, and would reverse and remand for a new trial.

———————————————